UNION TRANSFER COMPANY ET AL., APPELLEES, v. BEE LINE MOTOR FREIGHT ET AL., APPELLANTS.

34 N. W. 2d 363

Filed October 28, 1948. No. 32419.

*Willard F. McGriff* and *R. E. Powell,* for appellants.

*Harry E. Gantz, Donald E. Williams, George E. Truman,* and *George E. Wiard,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission vacating a portion of the operating authority granted to the Western Ice and Cold Storage Company by a certificate of convenience and necessity and denying the joint application of the Bee Line Motor Freight and the Merchants Motor Freight, Inc., successor in interest to Western Ice and Cold Storage Company, requesting that the former be permitted to lease from the latter the operating rights revoked by the vacation of a portion of the operating authority granted by the aforesaid certificate.

The record shows that on March 28, 1938, the railway commission issued a certificate of public convenience and necessity to the Western Ice and Cold Storage Company authorizing certain regular and irregular route operations for the hauling of commodities generally. One of the routes was from Sidney to Chadron and return, via Scottsbluff, Alliance, and Crawford. On October 7, 1943, the railway commission approved the lease of these operating rights evidenced by the certificate to Merchants Motor Freight, Inc., for three years.

Further lease agreements were made which purported to extend the lease to October 7, 1949. On February 19, 1948, the railway commission approved the extension of the lease to October 7, 1949.

On July 8, 1946, Bee Line Motor Freight sought authority from the railway commission to lease from Merchants Motor Freight, Inc., the Sidney-Chadron route, via Scottsbluff, Alliance, and Crawford, more particularly described in the certificate of convenience and necessity originally issued to the Western Ice and Cold Storage Company. The evidence shows that Bee Line Motor Freight has authority to operate other routes within the state and has terminals in Omaha and Scottsbluff. It is also shown that Bee Line Motor Freight has an option to purchase these operating rights from Merchants Motor Freight, Inc., and the latter has a similar option to purchase from the Western Ice and Cold Storage Company which it claims to have exercised. Bee Line Motor Freight asserts an intent to exercise its option to purchase as soon as possible.

On July 30, 1946, a complaint was filed by Union Transfer Company, Brown Transfer Company, State Transfer Company, and Neilsen-Petersen Transfer Lines, all being common carriers operating between Sidney and Scottsbluff, alleging that Merchants Motor Freight, Inc., since its lease of the operating rights from the Western Ice and Cold Storage Company on October 7, 1943, had failed to serve any points north of Sidney and had thereby abandoned its rights, that it had not held itself out as a common carrier to the points involved in the application and, by reason of the abandonment, it now has no rights to transfer to the Bee Line Motor Freight.

The evidence shows, and the representative of Merchants Motor Freight, Inc., admits, that the latter has not operated over the route in question since it leased the operating rights on October 7, 1943. The evidence is that war conditions and post-war difficulties made

it impossible to obtain necessary equipment and personnel. With more freight being offered by the public than its physical plant could handle, Merchants Motor Freight, Inc., found it necessary to spread its available equipment very thin. This resulted in its equipment being used in territories where business was heavier and in a failure to place any equipment on the route here involved. The representative of Merchants Motor Freight, Inc., testified that the volume of business in the territory was small and that a regular run over the route was impractical and nonprofitable. The primary question is whether such evidence is sufficient to sustain the order of the railway commission in vacating the operating authority of Merchants Motor Freight, Inc., in this territory.

The nature of the railway commission and the powers allotted to it have been set forth by this court in numerous decisions. Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234; Furstenberg v. Omaha & C. B. Street Ry. Co., 132 Neb. 562, 272 N. W. 756; In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418. Briefly stated, the railway commission is created by section 20, article IV, of the Constitution. It is granted powers and duties which include the regulation of rates, service, and general control of common carriers as directed by the Legislature. In a field where the Legislature has not acted, the commission is authorized to exercise the powers and perform the duties enumerated in the constitutional provision. This means, of course, that the Legislature may properly enact specific legislation limiting the scope of the commission's powers.

Pursuant to the aforesaid authority, the Legislature in 1937 enacted a comprehensive act pertaining to the regulation of motor carriers for hire engaged in the transportation of passengers and property. The provisions of this act are found in sections 75-222 to 75-250, R. S. 1943. Among other things they provide for the

issuance of certificates of convenience and necessity. It is here contended that the certificate issued to the Western Ice and Cold Storage Company, out of which the claimed rights of Merchants Motor Freight, Inc., stem, was revoked contrary to the provisions of section 75-238, R. S. 1943. This section provides: "Permits and certificates shall be effective from the dates specified therein, and shall remain in effect until terminated as herein provided. Any such permit or certificate may, upon application of the holder thereof, in the discretion of the State Railway Commission, be revoked or may, upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-222 to 75-250, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate."

It is contended that the evidence does not establish a "willful failure" to comply and consequently the order revoking the certificate is arbitrary and unreasonable.

The word "willful" like many other words in our language has varied meanings which are dependent upon the nature of the subject under discussion. The word often denotes an act which is voluntarily, knowingly, or permissively done as distinguished from one which is accidental or otherwise beyond the control of the person to be charged. The general notion that a willful act implies a bad purpose is derived from criminal statutes. It has no such meaning when used in a statute to denounce an act not in itself wrong. "Willful failure," as used in section 75-238, R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of. A failure to perform an act for a long period of time, which is required by law to be performed, generally constitutes a willful failure to perform. In the case before us the

failure to put into effect the service authorized by the certificate of convenience and necessity for more than three years may well constitute a willful failure within the meaning of the statute. There is evidence that equipment and personnel could not be obtained to provide the authorized service. There is additional evidence that the service was not rendered because it was unprofitable to provide it. We think the evidence was sufficient to sustain the finding of the railway commission that the latter statement was true and that there was a willful failure to comply with the requirements of the statute or the orders, rules, and regulations of the railway commission. The willful failure or refusal of a carrier to obtain permission from the railway commission to discontinue in whole or in part the service authorized under a certificate of convenience and necessity constitutes sufficient grounds to suspend, change, or revoke the certificate under general rules adopted by the railway commission. No claim is advanced that any such permission was sought or obtained. The evidence being sufficient to sustain the finding of willful failure to comply, the holding that the operating rights had been abandoned, and the order revoking the certificate, cannot be said to be unreasonable or arbitrary. The railway commission clearly acted within the scope of its authority. The evidence is sufficient to sustain the action of the commission. Under such circumstances this court will not interfere with findings of fact made by the commission.

The order of the commission revoking the certificate of convenience and necessity as to the route here involved being in all respects valid, the denial of the joint application requesting that the Merchants Motor Freight, Inc., be permitted to lease its operating rights to Bee Line Motor Freight must necessarily follow. Operating rights which have been lawfully revoked cannot become subject to lease. A certificate of convenience and necessity is in the nature of a permit or license and

is not property in the ordinary sense. Effenberger v. Marconnit, 135 Neb. 558, 283 N. W. 223. It can be revoked in the manner and for the reasons which the Legislature prescribes. When such a revocation is lawfully made there is nothing left to be conveyed.

AFFIRMED.