IN RE APPLICATION OF GEORGE NEUSWANGER ET AL.
GEORGE NEUSWANGER ET AL., APPELLEES, V. EARL HOUK,
DOING BUSINESS AS WESTERN NEBRASKA TRANSPORT
SERVICE ET AL., APPELLANTS.
104 N. W. 2d 235

Filed July 1, 1960.   No. 34725.

*Viren, Emmert, Hilmes & Gunderson, C. J. Burrill, Eleanor Knoll Swanson, Nelson, Harding & Acklie, Robert S. Stauffer, Robert E. Powell,* and *Stern & Harris,* for appellants.

*Jack Devoe* and *James E. Ryan,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the Nebraska State Railway Commission, hereinafter referred to as the commission. Harold Johnson, who then held certain operating authority from the commission to haul petroleum products in intrastate commerce as a motor common carrier, did, on September 30, 1958, file an application with the commission seeking to acquire, by transfer, some of the operating rights then held by George Neuswanger as a motor common carrier, which rights are described as follows: "Petroleum products, irregular routes between Superior, on the one hand, and, on the other hand, points generally throughout Nebraska." George Neuswanger joined in the application. Attached to the application

is a contract entered into by the above parties, dated September 23, 1958, wherein Neuswanger agrees to sell to Johnson the foregoing operating rights and to fully cooperate in seeking to obtain a transfer thereof to him.

On the same day, and accompanying the application for transfer, Johnson filed an application with the commission seeking an extension of the authority sought to be acquired, provided the commission approved the transfer thereof to him. The extension he requested is as follows: "for the transportation of petroleum products from all producing, refining, distributing and loading points within the State of Nebraska to points generally throughout Nebraska."

Thereafter, on November 11, 1958, the commission entered an order citing the applicant in Application No. M-2142, George Neuswanger of Alliance, Nebraska, to appear and show cause, if any there be, why an order should not be entered suspending, changing, or revoking in whole or in part the certificate of public convenience and necessity which had been issued to him, which charge and certificate will be more fully set out hereinafter.

A time and place was set by the commission for hearing these matters and notice was given thereof to all parties interested therein. In response to such notice eight holders of operating authority from the commission to haul petroleum products in intrastate commerce in Nebraska as motor common carriers, most of which authority is on a general or statewide basis, intervened in support of the order to show cause. They also filed protests contending, for various reasons therein set forth, which are sufficient to raise the issues hereinafter discussed, that the commission should not grant Harold Johnson his requests. These objectors are Basin Truck Company, Denver, Colorado; Preisendorf Transport, Inc., Grand Island, Nebraska; Ruan Transport Corporation; R. B. "Dick" Wilson, Inc., of Nebraska; Wheeler Trans-

port Service, Inc.; Melton Transport Company of Nebraska; Earl Houk, doing business as Western Nebraska Transport Service, Scottsbluff, Nebraska; and Herman Bros., Inc., of Omaha, Nebraska.

A consolidated hearing was had on these matters before an examiner on January 6, 1959. The examiner thereafter, on January 21, 1959, filed a report with the commission, dated January 19, 1959, wherein he recommended that the order to show cause that was issued by the commission against George Neuswanger should be vacated; that the transfer requested by Johnson should be approved; and that the authority so transferred should be extended in the manner requested. All eight of the protesting carriers filed exceptions to the examiner's report and to his recommendations therein contained. These exceptions the commission overruled. The commission then found the order to show cause, which it had previously issued against George Neuswanger, should be vacated and so ordered; it found that Harold Johnson should be authorized to acquire the operating rights held by George Neuswanger, which have been hereinbefore set forth, since the transfer thereof to Johnson would be consistent with the public interest and would not unduly restrict competition, and it ordered such operating rights transferred to Johnson to be consolidated with the authority he already held, cancelling his old certificate and ordering a new certificate to be issued covering such consolidated authority. The commission also found that the present and future public convenience and necessity require the extension of the authority sought to be transferred to the extent requested, and that doing so would not result in any new or different service or operation as to the territorial scope than that which is or may be rendered or engaged in by the respective parties under their present authority. Based on such findings it ordered such extended authority to be included in the new certificate which it ordered to be issued to Johnson. All eight protesting

carriers filed motions for rehearing and reconsideration. This appeal was taken by them from the overruling thereof.

For convenience we shall herein refer to Harold Johnson as either Johnson or appellee; to George Neuswanger as Neuswanger; and to the eight motor common carriers who intervened and protested as either appellants or protesting carriers.

Appellee contends that in certain respects the appellants' assignments of error do not meet the requirements of our Revised Rules. Applicable to this contention is the following: "Under section 25-1919, R. R. S. 1943, and Revised Rules of the Supreme Court, Rule 8a2(4), consideration of the cause on appeal is limited to errors assigned and discussed, except that the court may, at its option, note a plain error not assigned." Zych v. Zych, 165 Neb. 586, 86 N. W. 2d 611. We have examined appellants' briefs in this respect and find the contention made to be without merit.

In view of Johnson's status as a holder of authority to operate as a motor common carrier in intrastate commerce in Nebraska, section 75-240, R. R. S. 1943, has application to these proceedings. As stated in Burlington Truck Lines, Inc. v. Brown Transfer, *ante* p. 331, 102 N. W. 2d 450: "An application to the Nebraska State Railway Commission for the transfer of valid intrastate operating rights from one common carrier to another is properly instituted under section 75-240, R. R. S. 1943."

There are three phases of this proceeding, each of which requires separate consideration. However, in view of the contentions made by the parties in regard thereto, it would be well to set out some general principles which are applicable to appeals from the commission.

"The power of the Nebraska State Railway Commission to regulate common carriers is derived from Article IV, section 20, of the Constitution. Such powers are

plenary and self-executing in the absence of specific legislation on the subject.

"Where the Legislature enacts specific legislation implementing Article IV, section 20, of the Constitution, the Nebraska State Railway Commission is subject to and governed by the provisions of such enactment." In re Application of Richling, 154 Neb. 108, 47 N. W. 2d 413. See, also, R. B. "Dick" Wilson, Inc. v. Hargleroad, 165 Neb. 468, 86 N. W. 2d 177; In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552; Moritz v. Nebraska State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545; In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418.

"The railway commission is clothed with legislative, administrative and judicial powers, and * * * this court has jurisdiction to review the orders and regulations of the commission on appeal." Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234.

"On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission administrative or legislative in nature, the only questions to be determined are whether the Nebraska State Railway Commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." In re Application of Neylon, *supra.* As stated in Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756: "Where the action of the railway commission is not unreasonable or arbitrary and does not exceed its powers or violate a rule of law, this court will not interfere with its findings of fact for the reason that they involve administrative and legislative rather than judicial questions." And, in Caudill v. Lysinger, 161 Neb. 235, 72 N. W. 2d 684, we said: "The question of whether or not action is unreasonable and arbitrary is of course one of fact." See, also, Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

On November 11, 1958, the commission ordered Neus-

wanger "* * * to appear before an Examiner of the Commission in the Commission Hearing Room, Capitol Building, Lincoln, Nebraska at 9:30 a. m. on Tuesday, January 6, 1959, to show cause, if any there be, why said certificate of public convenience and necessity * * * should not be suspended, changed or revoked for willful failure to comply with the provisions of Sections 75-222 to 75-250, R. R. S. 1943, as amended, with the lawful orders, rules, and regulations of said certificate including the specific counts more fully set forth in Appendix B hereto, * * *." Appendix "B" is as follows: "Specific Counts: 1. Cessation of operations and discontinuance of service contrary to General Order 81, section (9)(a)."

Provisions of section (9)(a) of General Order 81 are as follows: "(9) Failure of carriers to obtain Commission approval to: (a) Discontinue, either in whole or in part, service authorized under a certificate or permit."

Section 75-238, R. R. S. 1943, provides, in this respect, as follows: "Permits and certificates shall be effective from the dates specified therein, and shall remain in effect until terminated as herein provided. Any such permit or certificate may, upon application of the holder thereof, in the discretion of the State Railway Commission, be revoked or may, upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part, for willful failure to comply with any of the provisions of sections 75-222 to 75-250, or with any lawful order, rule or regulation of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate."

We said in In re Application of Resler, 154 Neb. 624, 48 N. W. 2d 718, that: " "* * * should the commission, after hearing, revoke, change or suspend the certificate, it must do so for willful failure to comply with the provisions of the act or with any lawful rule or regulation

of the commission promulgated thereunder, or with any term, condition or limitation of such permit or certificate.'" And in Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363, it was said: "The term 'willful failure,' as used in section 75-238, R. S. 1943, is such behavior through acts of commission or omission which justifies a belief that there was an intent entering into and characterizing the failure complained of."

Neuswanger, doing business as Nebraska Transport Company, was originally granted a certificate of public convenience and necessity by the commission on April 5, 1938, such certificate being granted to him pursuant to his application designated by the commission as No. M-2142. This authority was clarified by the commission as of February 15, 1949, and its certificate issued to Neuswanger as of that date describes his operating rights as follows: "Commodities generally, except those requiring special equipment. ROUTE OR TERRITORY AUTHORIZED: Irregular routes between points in counties of Box Butte, Morrill, Scotts Bluff, Dawes, Sioux and Sheridan, on the one hand, and, on the other hand, Omaha, Lincoln, Superior and points generally throughout the state. SERVICE AND ROUTE OR TERRITORY AUTHORIZED: Petroleum products between Superior, on the one hand, and, on the other hand, points generally throughout the state of Nebraska." It is the latter part of this authority that is here involved.

The authority here sought to be acquired by Johnson from Neuswanger was leased by Neuswanger, with the commission's approval, to Fred Worm of Ord, Nebraska, doing business as Worm Transport Company, from February 10, 1949, to April 1, 1955. Just what operations Worm conducted thereunder the record does not show. Although Neuswanger said he solicited business during the period from April 1, 1955, to February 1, 1957, there is no evidence to show that any operations were carried on under this authority during that period.

Beginning with February 1957, Neuswanger entered into a lease agreement, approved by the commission, with H. H. Edwards of North Platte. The equipment leased by Neuswanger from Edwards consisted of a truck-tractor and trailer. During the period from February 1957 through September 1958, the evidence shows this unit, which was driven by Edwards, was used to haul 140 loads of petroleum products from the Champlin Oil Company's refinery at Superior, Nebraska, to points in Nebraska as follows: 134 loads to Larson Service at Gothenburg; 2 loads to City Oil Co. at Harvard; 2 loads to Porter Oil Co. at Sidney; 1 load to Mayers' Service at North Platte; and 1 load to Sears Service at Auburn. Edwards solicited and obtained all of this business except the 2 loads delivered to Sidney, which orders were obtained by Neuswanger. This operation continued and was in effect at the time of the hearing although no evidence was introduced to show the extent thereof during the months of October, November, and December of 1958, and up to January 6, 1959, the date of hearing. Under this situation we cannot say the commission was wrong in vacating its order to show cause for the evidence adduced fails to show that Neuswanger willfully ceased or discontinued to offer his services to those who desired them and, if they did, that he failed to perform the services requested insofar as his operating authority permitted. Consequently there was no need to obtain the commission's approval to discontinue such service either in whole or in part and Neuswanger was therefore not guilty of violating section (9)(a) of the commission's General Order 81. There was also no evidence adduced to show any willful failure on the part of Neuswanger to observe and comply with the provisions of sections 75-222 to 75-250, R. R. S. 1943, or with the terms, conditions, or limitations of his certificate, or with the lawful orders, rules, and regulations of the commission promulgated under the foregoing statutes. In view thereof we can only

come to the conclusion that the commission was right in vacating its order to show cause. See, Caudill v. Lysinger, *supra;* Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310.

The second question involved is, was the authority Johnson sought to acquire dormant? If it was then the following provision of section 75-240, R. R. S. 1943, would have application: "Provided, that if any of the certificates or permits proposed to be merged or consolidated are dormant, the commission may approve an application for consolidation or merger only upon proof of and a finding that such merger or consolidation is or will be required by the present and future public convenience and necessity, in the same manner as provided in section 75-230; * * *." See, also, Schmunk v. West Nebraska Express, 159 Neb. 134, 65 N. W. 2d 386; Caudill v. Lysinger, *supra.* Under this proviso, if the authority appellee sought to acquire was dormant, the burden was on him to show that the transfer would be required by the present and future public convenience and necessity. See, Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra;* Schmunk v. West Nebraska Express, *supra;* In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507.

We think the question of dormancy, in case where an application is made for transfer of operating rights, should be the same as where an order to show cause has been issued based upon that ground. In Caudill v. Lysinger, *supra,* we said: "It is conceded that there was no cancellation and revocation of the certificate in February 1952. Even if there had been evidence of an order finding dormancy on February 1, 1952, it would still be necessary to say that dormancy did not exist at the time the order to show cause was issued and at the time of the hearing." Applying the foregoing here we find the operating rights sought to be acquired by Johnson were not dormant at the time he made application to the commission for the transfer thereof.

In this situation the following language of section 75-240, R. R. S. 1943, applies: "If, after such hearing, the commission finds that the transaction proposed will be consistent with the public interest and does not unduly restrict competition and that the applicant is fit, willing and able to properly perform the proposed service, it may enter an order approving and authorizing such consolidation, merger, purchase, lease, operating contract or acquisition of control of the properties, or any part thereof, certificates or permits of the whole, or any part thereof, upon such terms and conditions as it shall find to be just and reasonable; * * *."

We said in Caudill v. Lysinger, *supra:* "* * * where a certificate is not dormant it may be transferred on approval of the commission under reasonable rules and regulations to be prescribed by it, (1) if the transfer will be consistent with public interest, (2) if it will not unduly restrict competition, and (3) if the transferee is fit, willing, and able to perform the service proposed. § 75-240.02, R. S. Supp., 1953." While the above quotation refers to section 75-240.02, R. R. S. 1943, which controls when the party seeking the transfer is not a motor common carrier, the provisions of section 75-240, R. R. S. 1943, are in this respect the same.

There is no question but that Johnson is fit, willing, and able to perform all services that the public may require under the operating authority he seeks to acquire and consolidate with that which he already has. In fact, the record shows he will undoubtedly furnish better service than that which Neuswanger and his lessee have, in the past, performed thereunder. Under this situation we cannot say that the commission's findings that the proposed transfer will be consistent with the public interest and will not unduly restrict competition were unreasonable or arbitrary. In fact, it would seem to be a desirable transfer from the public's point of view.

The third phase of the litigation raises the question, will the proposed extension of the operating rights

transferred from Neuswanger to Johnson, when consolidated in Johnson with the operating rights he already holds, result in a new or different service or operation as to territorial scope than that which is or may be rendered or engaged in by the respective parties under the authority as it existed prior thereto and, if so, did appellee establish that such extended rights will be required by the present and future public convenience and necessity?

Section 75-240, R. R. S. 1943, provides, in this respect, as follows: "* * * and provided further, that if the proposed merger or consolidation of the certificates or permits will permit or result in a new or different service or operation as to territorial scope than that which is or may be rendered or engaged in by the respective parties, * * * the commission may approve such an application for merger or consolidation only upon the basis of proof of and a finding that the proposed merger or consolidation is or will be required by the present and future public convenience and necessity, in the same manner as provided in section 75-230."

The commission found that the transfer will not result in a new or different service or operation as to the territorial scope than that which is or may be rendered or engaged in by the respective parties under the authority as it existed in the parties prior to the transfer. That such a finding is wrong, and therefore unreasonable and arbitrary, is made self evident by reading the certificates of public convenience and necessity held by Neuswanger and Johnson prior to the transfer of a part of Neuswanger's rights to Johnson, and the extension of the authority so transferred. The rights held by Neuswanger at the time the application to transfer was made have already been set forth herein. Those then held by Johnson were as follows:

"A. SERVICE AUTHORIZED: Petroleum and petroleum products, except crude oil and anhydrous ammonia; in bulk in tank vehicles.

"ROUTE OR TERRITORY AUTHORIZED: From all producing, refining, distributing and loading points within the State of Nebraska as points of origin, to O'Neill, Atkinson, Stuart, Bassett, Springview, Long Pine, Ainsworth, Johnstown, Cody, Merriman, Gordon, Hay Springs, Chadron and Valentine, as points of destination, with return of rejected shipments authorized, over irregular routes.

"B. SERVICE AUTHORIZED: Liquified petroleum gas in bulk in tank vehicles.

"ROUTE OR TERRITORY AUTHORIZED: From all producing, refining, distributing and loading points within the State of Nebraska as points of origin to points and places in Nebraska on and West of U. S. 183, as points of destination, with return of rejected shipments authorized.

"C. SERVICE AUTHORIZED: Liquid petroleum products in bulk in tank trucks.

"ROUTE OR TERRITORY AUTHORIZED: From all refining and distributing points in Nebraska, as points of origin, to Springview, Valentine, and Crookston, as points of destination, with return movement of rejected shipments only, over irregular routes."

The extension would permit Johnson to engage in statewide transportation of petroleum products as a motor common carrier as to both points of origin and destination, operating rights which neither Johnson nor Neuswanger held. That Johnson so understood his application is made clear by his testimony, for he testified if the extended rights were granted he intended to start service on a statewide basis.

We come then to the question, did appellee establish that the extended service will be required by the present and future public convenience and necessity, such burden being on him? See Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra*. Before discussing this question it is well to restate some principles governing the commission's regulation of services in the field of

intrastate commence, as set forth in our opinions. In Furstenberg v. Omaha & C. B. St. Ry. Co., *supra,* we said: "Justice Brandeis, in speaking of the necessity for regulation of public utilities or business affected with the public interest and certificates of convenience and necessity therefor, expressed the modern view in a dissenting opinion in New State Ice Co. v. Liebmann, 285 U. S. 262, when he said: 'The purpose of requiring it is to promote the public interest by preventing waste. Particularly in those businesses in which interest and depreciation charges on plant constitute a large element in the cost of production, experience has taught that the financial burdens incident to unnecessary duplication of facilities are likely to bring high rates and poor service. There, cost is usually dependent, among other things, upon volume; and division of possible patronage among competing concerns may so raise the unit cost of operation as to make it impossible to provide adequate service at reasonable rates. The introduction in the United States of the certificate of public convenience and necessity marked the growing conviction that under certain circumstances free competition might be harmful to the community and that, when it was so, absolute freedom to enter the business of one's choice should be denied.' As to common carriers, this is the very foundation and the only reason ever given for the requirement of certificates of convenience and necessity." And in Publix Cars, Inc. v. Yellow Cab & Baggage Co., *supra,* this court said: "It must be borne in mind that. it is not the policy of the law in the regulation and control of public utilities to promote competition between common carriers as a means of providing service to the public. The policy is that through regulation of an established carrier or carriers occupying a given field and protecting it from competition it may be able to serve the public more efficiently and at a more reasonable rate than would be the case if other competing businesses were authorized to serve the public in the

same territory. * * * The rule undoubtedly is that existing carriers shall receive a fair measure of protection against ruinous competition. * * * Under this theory, certificates of convenience and necessity should be granted, if any are to be granted, to existing carriers if they are able to show their ability to furnish the required service to the public, on the theory that existing investments should first be protected, everything else being substantially equal." See, also, In re Application of Canada, *supra*.

Out of these principles has come a yardstick by which we have measured this question in cases where new or extended operating rights are sought. It is as follows: "In determining the issue of public convenience and necessity, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified operation without endangering or impairing the operations of existing carriers contrary to the public interest." In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603. See, also, Preisendorf Transp., Inc. v. Herman Bros., Inc., *supra*; Houk v. Peake, *supra*; Schmunk v. West Nebraska Express, *supra*.

The evidence shows appellants are all motor common carriers of petroleum products actively operating in Nebraska in intrastate commerce under authority, most of which is on a statewide basis, issued to each of them by the commission; that they actively solicit business in various ways over the entire state and can handle more business than they now have with the equipment and terminal facilities they presently possess agreeing, however, to get additional equipment if there is need for them to do so; that the extension would authorize new and competitive services in the same field in which they are now operating for which services no real need has been shown; that such new services would

take from these protesting carriers some of the traffic which they now have; that the services now rendered by these protesting carriers in this field are adequate and satisfactory; that there is no present need for additional services therein; and that the protesting carriers will provide such additional equipment as is needed to provide all the services the public needs in this field.

Under the evidence adduced we do not think there is any real need for the additional services which could be rendered under the extension authorized. We think these services can and will be satisfactorily performed by carriers already in the field. To permit these additional services in this same field of transportation would endanger or impair the operations of carriers already in that field. We hold, under the situation here presented, that the commission's finding that the present and future public convenience and necessity requires an extension of the authority transferred is both unreasonable and arbitrary and cannot be sustained.

Appellee, in his application, states: "That the source of supply of petroleum products shifts from time to time and because of this condition it has been the practice and policy of this Commission in recent years to grant petroleum carriers authority to serve from all producing, refining, distributing and loading points within the state as points of origin." He cites Houk v. Peake, *supra,* and Johnson v. Peake, 163 Neb. 18, 77 N. W. 2d 670. It is true that in each of those cases we approved the extension of the operating rights to cover sources of origin of the product being transported, but the factual situation therein, as to points of destination, was not the same as herein and each case must stand or fall on its own factual situation. We also call attention to the fact that in Houk v. Peake, *supra,* we said: "Herein, applicant's existing destination area has not been enlarged and it is territory which has been theretofore satisfactorily served by applicant in a field not occupied by or adequately and satisfactorily served by protestants.

A small portion of such territory has been served at times few in number by two protestants who never have actually occupied applicant's field of destination but would do so if future business then made it necessary and profitable." And, in Johnson v. Peake, *supra,* we said: "Without question there are among the protesting carriers those who have intrastate authority to serve the area involved. Some of them are presently serving customers in the area involved. The larger of these carriers, from the standpoint of business handled and equipment available, do not maintain terminals nor equipment in the area involved. Two of them offered evidence that they were ready, willing, and able to establish terminals and maintain equipment in the area involved and to render the newly required service. They, however, obviously were not ready or willing to do so until it appeared to be economically feasible. The evidence is ample to sustain the commission's finding that existing authorized intrastate carriers have been unwilling and have failed to furnish the adequate and satisfactory service in the area that the business requires." It thus becomes evident that the factual situation in these two cases presented an entirely different picture as to what service the motor common carriers in the field had been rendering or under what condition they were willing to render additional service. We do not think the holdings in these cases are controlling here.

We have come to the conclusion that the order of the commission vacating its order to show cause, which it had caused to be issued against Neuswanger, should be affirmed; that its order granting the application of Johnson to have transferred to him certain of the operating rights held by Neuswanger, which Neuswanger had agreed to sell to Johnson, and have the same consolidated with operating rights already held by Johnson should be affirmed; but that the order of the commission extending the operating rights so transferred to and consolidated in Johnson's certificate of public con-

venience and necessity should be vacated and set aside. It is so ordered. All costs are taxed to appellee.

AFFIRMED IN PART, AND IN PART REVERSED.