REQUESTED BY: Rod Johnson, Chairman Nebraska Public Service Commission
By letter dated December 12, 1995, the Nebraska Public Service Commission ["Commission"] requested our opinion regarding the jurisdiction of the Commission to regulate taxicab service provided between Eppley Airport to points in Omaha, Nebraska. The issue has arisen as a result of a petition for a declaratory ruling filed by 5th Avenue Cab of Council Bluffs, Iowa [the "Petitioner"]. In re 5th Avenue Cab, Council Bluffs,Iowa, Application No. PI-15. In this proceeding, the Petitioner has asserted that its operation is interstate in nature, and not subject to Commission jurisdiction, because a portion of the route travelled between Eppley Airport and points in Omaha passes through the City of Carter Lake, Iowa. Two other taxicab carriers, Happy Cab and Safeway Cabs, Inc. [the "Intervenors"], have intervened in the proceeding, asserting that the Commission has jurisdiction over Petitioner's taxicab operations. A hearing on the application for declaratory order was held, and briefs were subsequently submitted on behalf of Petitioner and the Intervenors. A majority of the Commission, by Order entered on November 7, 1995, determined the Commission had jurisdiction over Petitioner's taxicab operation "between Eppley Airport and all points in Nebraska." Order at 5.
On December 29, 1995, we requested that the Commission withdraw its request for an opinion on the jurisdictional issue raised in the 5th Avenue Cab proceedings, and suggested that the Commission request briefs from the parties on certain additional issues. These issues were: (1) Whether Petitioner's activities were exempt from jurisdiction of the Interstate Commerce Commission ["ICC"] under the "taxicab service exemption" in 49 U.S.C. § 10526(a)(2) or the exemption of motor vehicle transportation incidental to air transportation under 49 U.S.C. § 10526(a)(8)(A); and (2) If Petitioner's activities were exempt from ICC jurisdiction, whether the Commission had jurisdiction to regulate such activities pursuant to its authority under Neb. Const. art. IV, § 20, to exercise "general control of common carriers. . . ." In addition, we suggested that you ask the parties to address the effect, if any, of federal legislation pending at that time providing for the termination of the ICC and the transfer of various duties of that agency to a new body. The Commission subsequently withdrew its initial request for an opinion, pending receipt of additional briefs from the parties on these questions. After receiving such briefs, you have resubmitted the Commission's request for our opinion regarding its jurisdiction over taxicab service between Eppley Airport and Omaha, Nebraska.
For the reasons set out below, we conclude that Petitioner's activities are exempt from federal jurisdiction, and that no federal statute preempts the state's regulation of Petitioner's taxicab service. We further conclude that the Commission has authority under Neb. Const. art. IV, § 20, to regulate Petitioner's activities as a common carrier. Finally, we conclude that, under the facts presented, the Commission's exercise of jurisdiction to regulate Petitioner's inherently local activity, conducted predominately in Nebraska, does not unduly burden interstate commerce.
I. FEDERAL MOTOR CARRIER STATUTES
On December 29, 1995, the President signed legislation abolishing the Interstate Commerce Commission. ICC Termination Act of 1995 [P.L. 104-88, 109 Stat. 803] [the "Act"]. The Act abolished the Interstate Commerce Commission, and transferred the ICC's jurisdiction over motor carriers to the Secretary of Transportation ["Secretary"] and the newly-created Surface Transportation Board ["Board"]. Newly enacted 49 U.S.C. § 13501
provides:
 The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier —
(1) between a place in —
* * *
 (B) a State and another place in the same State through another State; . . . .
The Act also provides numerous exemptions from the Secretary and Board's jurisdiction over motor carrier transportation.49 U.S.C. §§ 13502 to 13506. Among those exemptions is that contained in 49 U.S.C. § 13506(a)(2), which provides: "Neither the Secretary nor the Board has jurisdiction . . . over — (2) a motor vehicle providing taxicab service and having a capacity of not more than 6 passengers and not operated on a regular route or between specified places; . . . ." The Act also provides that the Secretary and the Board do not have jurisdiction over "transportation of passengers by motor vehicle incidental to transportation by aircraft; . . . ." 49 U.S.C. § 13506
(a)(8)(A).
Finally, the Act contains the following declaration of federal authority over state regulation of intrastate transportation of motor carriers of passengers:
 No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to scheduling of interstate or intrastate transportation (including discontinuance or reduction in the level of service) provided by motor carriers of passengers subject to jurisdiction under subchapter 1 of chapter 135 of this title on an interstate route or relating to the implementation of any change in the rates for such transportation or for any charter transportation except to the extent that notice, not in excess of 30 days, of changes in schedules may be required. This subsection shall not apply to intrastate commuter bus operations.
49 U.S.C. § 14501(a).
These portions of the Act mirror prior federal statutes governing the Interstate Commerce Commission and motor carrier transportation. See 49 U.S.C. § 10521(a)(1)(B) (general jurisdiction of ICC); 49 U.S.C. §§ 10522 to 10526 (exemptions from ICC jurisdiction); and 49 U.S.C. § 11501(e) (federal authority over intrastate transportation). Accordingly, it is appropriate to analyze their impact on the question presented in light of judicial interpretations relating to prior federal motor carrier legislation.
Initially, it is evident that Petitioner's operation as a motor carrier of passengers for hire over the Eppley-to-Omaha route, passing, albeit briefly, through Carter Lake, Iowa, involves "interstate" transportation. As such, it would, absent exemption, be subject to the jurisdiction of the Secretary and the Board, based on their general jurisdiction over transportation of passengers by motor carrier "between a place in — (B) a State and another place in the same State through another State; . . . ." 49 U.S.C. § 13501(1)(B).
While Petitioner's operation would fall within the general jurisdiction of the Secretary or the Board, Congress has precluded the Secretary or the Board from exercising jurisdiction over "motor vehicle[s] providing taxicab service and having a capacity of not more than 6 passengers and not operated on a regular route between specified places; . . . ."49 U.S.C. § 13506(a)(2). Based on the facts presented, it appears that Petitioner's taxicab service is exempt from federal jurisdiction under the "taxicab service exemption".
Cases construing the "taxicab service exemption" under prior federal statutes recognized that this exception to ICC jurisdiction was based on Congressional policy recognizing that "[t]axicabs generally perform local transportation services, . . . ." I.C.C. v. Mr. B's Services, Ltd.,934 F.2d 117, 121 (7th Cir. 1991). See also I.C.C. v.Miller, 360 F. Supp. 1167 (D.N.H. 1973); Whitman'sBlack White Cab Co., Inc. Common CarrierApplication, 47 M.C.C. 737 (1948). There appears to be no question here that Petitioner is, in fact, engaged in providing taxicab service in vehicles having a capacity of no more than six passengers. Also, while the route traveled follows the same road from Eppley Airport through the City of Carter Lake on each trip to Omaha, this does not constitute a "regular route between specified places. . . ." See Crescent ExpressLines, Inc. v. United States, 49 F. Supp. 92, 95
(S.D.N.Y. 1943) ("Regular route" under federal Motor Carrier Act "means one which has only `fixed terminii', not one which always traverses the same road for part of its route.");Motor Carrier Operations Between Washington,D.C. and Mount Vernon, Va., 51 M.C.C. 197 (1949) (repeated use of particular bridges or highways not conclusive as to whether taxicab operations conducted over regular route). The "irregular route" nature of Petitioner's activities is born out by the Commission's own regulations defining this term. 291 NAC 3.003.07 and 3.003.08.
Based on the foregoing, it appears that Petitioner's provision of taxicab service from Eppley Airport to Omaha, while traversing through a portion of Iowa, is exempt under federal law from any exercise of jurisdiction by the Secretary or the Board.[1] Moreover, while the Act contains a provision limiting state authority to regulate motor carriers of passengers in certain contexts, this provision, by its terms, applies only to transportation "by motor carriers of passengers subject to jurisdiction under subchapter I of chapter 135 of this title on an interstate route. . . ." 49 U.S.C. § 14501(a). Because Petitioner is not engaged in activity subject to the jurisdiction of the Secretary or the Board, this provision cannot be construed to limit the State's authority to regulate Petitioner's activity.
As there is no federal statute expressly preempting the State's regulation of Petitioner's taxicab service, it appears that two questions remain: (1) Whether the Commission has jurisdiction to regulate Petitioner's activity; and (2) Whether, in the absence of federal regulation, State regulation of Petitioner's activity would unduly burden interstate commerce.
II. COMMISSION JURISDICTION
Neb. Const. art. IV, § 20, provides:
 There shall be a Public Service Commission, consisting of not less than three not more than seven members, as the Legislature shall prescribe, . . . . The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision.
Commission authority over common carriers is "rooted in legislative, judicial, and electoral activities during the early 1900s." State ex rel. Spire v. NorthwesternBell Tel. Co., 233 Neb. 262, 274, 445 N.W.2d 284, 292
(1989).
 Briefly stated, the [Commission] is created by section 20, article IV, of the Constitution. It is granted powers and duties which include the regulation of rates, service, and general control of common carriers as directed by the Legislature. In a field where the Legislature has not acted, the commission is authorized to exercise the powers and perform the duties enumerated in the constitutional provision. This means, of course, that the Legislature may properly enact specific legislation limiting the scope of the commission's powers.
Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280,283, 34 N.W.2d 363, 365 (1948).
The Nebraska Supreme Court, discussing the construction to be applied to the constitutional powers of the Commission, has stated:
 All powers and jurisdiction of the Public Service Commission must be found within the constitutional provision creating it. This provision should not be construed so narrowly as to defeat its purpose. Rather, it should be liberally construed to effectuate the purpose for which the commission was created, which is primarily to serve the public interest.
Myers v. Blair Telephone Co., 194 Neb. 55, 63,230 N.W.2d 190, 196 (1975).
"In the absence of implementing legislation the powers of the . . . commission under" art. IV, § 20, "are plenary in character and self-executing." In re Application ofRichling, 154 Neb. 108, 110, 47 N.W.2d 413, 415 (1951).See also Neuswanger v. Houk, 170 Neb. 670, 674-75,104 N.W.2d 235, 240 (1960) (recognizing that the Commission's constitutional "powers are plenary and self-executing in the absence of specific legislation on the subject.").
The Legislature, in defining the scope of the Commission's regulatory powers, has provided that, with specified exceptions, "the commission shall regulate and exercise general control as provided by law over all common carriers . . . engaged in the transportation of freight or passengers for hire . . . in Nebraska intrastate commerce." Neb. Rev. Stat. § 75-109
(Supp. 1995). see also Neb. Rev. Stat. §75-118(1) (Supp. 1995) (Commission shall "[f]ix all necessary rates, charges, and regulations governing and regulating the transportation, storage, or handling of household goods or passengers in Nebraska intrastate commerce; . . . ."). With respect to motor carriers, the Legislature has, as to intrastate motor carriers, defined "common carrier" to mean "any person who or which undertakes to transport passengers . . . for the general public in intrastate commerce by motor vehicle for hire, . . . ." Neb. Rev. Stat. § 75-302(4) (Supp. 1995). It has further defined "intrastate commerce" as "commerce between any place in this state and any other place in this state and not in part through any other state; . . . ." Neb. Rev. Stat. §75-302(8) (Supp. 1995).
Thus, while the Legislature has enacted "specific legislation" regarding the Commission's power to regulate "intrastate commerce", the above-cited statutes do not clearly constitute "specific legislation" evincing a legislative intent to "limit" the Commission's otherwise plenary constitutional power to exert "general control of common carriers" under art. IV, § 20. In our opinion, the Commission is therefore authorized to exercise regulatory authority over Petitioner's activities under its constitutional grant of power, even though Petitioner's activities in transporting persons by motor vehicle as a common carrier for hire over the Eppley-to-Omaha route via Carter Lake fall outside the definition of "intrastate commerce" in § 75-302(8).
III. COMMERCE CLAUSE ANALYSIS
If, as we have determined, there is no federal statute preempting the Commission from exercising regulatory authority over Petitioner's taxicab service, and the Commission appears to have jurisdiction under the Nebraska Constitution to regulate Petitioner's activity, the only issue remaining for consideration is whether State regulation would violate the Commerce Clause of the U.S. Constitution. U.S. Const. art. 1, § 8, cl. 3.
The United States Supreme Court has recognized that, while the "Commerce Clause significantly limits the ability of the States and localities to regulate . . . interstate commerce, . . ., it does not elevate free trade above all other values." Maine v. Taylor, 477 U.S. 131, 151 (1986). In City of Philadelphia v. New Jersey, 437 U.S. 617,623 (1978), the Court confirmed the power of states to regulate activities affecting the health and welfare of their citizens, in the absence of federal regulation:
 Although the Constitution gives Congress the power to regulate commerce among the States, many subjects of potential federal regulation under that power inevitably escape congressional attention `because of their local character and their number and diversity.'. . . In the absence of federal legislation, these subjects are open to control by the States so long a they act within the restraints imposed by the Commerce Clause itself. . . . The bounds of these restraints appear nowhere in the words of the Commerce Clause, but have emerged gradually in the decisions of this Court giving effect to its basic purpose. (citations omitted) (emphasis added).
Discussing the State's ability regulate matters affecting interstate commerce consistent with the Commerce Clause, the Court has stated:
 Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. [Citation omitted.] If a legitimate local purpose is found, then . . . the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues [citation omitted], but more frequently it has spoken in terms of `direct' and `indirect' effects and burdens.
Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).
Assertion of Commission jurisdiction over Petitioner's taxicab service is strongly supported by the U.S. Supreme Court's decision in Buck v. California, 343 U.S. 99
(1952). Buck involved a criminal prosecution of two taxicab drivers charged with violating a San Diego County ordinance making it unlawful for a person to operate a taxicab in the unincorporated area of the County without a permit issued by the sheriff. The taxicab drivers had picked up passengers in Mexico and were transporting them across the unincorporated area of the County when they were arrested. They were subsequently convicted of violating the ordinance. The drivers challenged their convictions, arguing that the County's application of the ordinance imposed an impermissible burden on foreign commerce.Id. at 100-101.
Initially, the Supreme Court noted that, under the federal Motor Carrier Act of 1935, the Interstate Commerce Commission was given "broad power of regulation over motor vehicles", but that "Congress partially excluded taxicabs from such regulation. . . ." 343 U.S. at 101. The Motor Carrier Act provided, in part, that, with certain exceptions, "taxicabs, or other motor vehicles performing a bona fide taxicab service, having a capacity of not more than six passengers and not operated on a regular route or between fixed terminii," were not subject to ICC regulation. Id. (citing49 U.S.C. § 303(b)). The ICC had enacted regulations establishing minimum qualifications for drivers, including taxicabs. The Court found that this did not preclude the County "in the exercise of its police power, from providing additional specifications as to qualifications, not inconsistent with or in conflict with the regulations of the Interstate Commerce Commission." Id. at 102. It determined that the County's ordinance did not conflict with the federal regulations, and that "California ha[d] a legitimate interest in the kind and character of persons who engage in the taxicab business in the State." Id.
Addressing the contention that application of the County ordinance placed an undue burden on foreign commerce, the Court stated:
 The operation of taxicabs is a local business. For that reason, Congress has left the field largely to the states. Operation of taxicabs across state lines or international boundaries is so closely related to the local situation that the regulation of all taxicabs operating in the community only indirectly affects those in commerce, and so long as there is no attempt to discriminatorily regulate or directly burden or charge for the privilege of doing business in interstate or foreign commerce, the regulation is valid. The operation is "essentially local," and in the absence of federal regulation, state regulation is required in the public interest.
Id. at 102 (emphasis added).
The Court found that, under the circumstances presented, the County's ordinance did not contravene the Commerce Clause:
 Even if appellants were engaged in foreign commerce at the time of their arrest and did not intend to engage in intrastate commerce, the permit was not required because they were engaged in foreign commerce. Under the permit they were free to engage in both intrastate and foreign commerce. The ordinance requires a written application for a permit, a small fee, and compliance with certain standards relating to the service and to the public safety. Our prior cases would not justify us in holding that the ordinance is an unreasonable burden on foreign commerce in its application to the stipulated facts here.
Id. at 102-103 (emphasis in original).
In addition to the decision in Buck, the case ofYellow Cab Co. v. Broward County, 282 So.2d 1
(Fla.Dist.Ct.App. 1973) ["BrowardCounty"], is instructive. Broward County
involved an action by the County to enjoin Yellow Cab from interfering with an exclusive franchise granted by the County to another carrier to conduct airport limousine service transporting airline passengers from the Fort Lauderdale Airport. Yellow Cab counterclaimed for an injunction restraining the County from interfering with its transport of prepaid interstate passengers, asserting the County's actions placed an unreasonable burden on interstate commerce. Id. at 2.
The court in Broward County noted that the Interstate Commerce Act provided an exception from federal regulation for "the transportation of person or property by motor vehicle when incidental to transportation by aircraft; . . . ."Id. at 3 (citing
49 U.S.C. § 203(b)(7a)). It found that the transportation provided by Yellow Cab was "incidental to air transportation", and, therefore, was "exempt from the certificate and permit requirements of the interstate commerce act." Id. The question presented, then, involved "who [was] entitled to license carriers providing motor transportation incidental to prearranged interstate air transportation". Id.
Discussing the application of the commerce clause in this context, the court stated "[i]t [was] clear that the county [did] not have the power to totally prohibit the mentioned operation."Id. The county did, however, "have the power to license and impose reasonable regulations regarding operations. . . ." Id. The court quoted the following language from Park'N'Fly of Texas, Inc. v. Cityof Houston, 327 F. Supp. 910 (S.D. Tex. 1971):
 "It is well established that a State or city may validly regulate interstate commerce `as long as there is a real relation to the suitable protection of the people of the state and the regulation is reasonable in its requirements' . . . . But the principle that a `State may enact local laws under its police power in the interest of the welfare of the people, although they affect interstate commerce' until the area of regulation is preempted by Congress, is not applicable where the State or local government `passes beyond the exercise of its legitimate authority, and undertakes to regulate interstate commerce by imposing burdens on it.'"
282 So.2d at 3.
In light of these principles, the court noted that "the county would be empowered to consider matters such as safety, operational fees, procedural safeguards, restrictions on the carrier to operations within its exceptional status, and insurance." Id. It found, however, that "the county [could not] bar appellant from functioning due to the exclusive franchise" awarded to another carrier, "as such action [would] constitute an improper burden upon interstate commerce."Id. It nevertheless upheld the trial court's refusal to grant Yellow Cab "permission to pick up passengers at the Airport without bridle or regulation . . .", as it had not applied to the County "for licensing in order that the County could impose such reasonable regulations and supervision" as noted by the court. Id. at 4.
The decisions in Buck and BrowardCounty indicate that the Commission's exercise of regulatory jurisdiction over Petitioner's activities would not place an impermissible burden on interstate commerce. While the passenger common carriage engaged in by Petitioner is, technically, "interstate" in nature, because a small portion of the route travelled by Petitioner from Eppley Airport to Omaha passes through the State of Iowa, the dominant character of Petitioner's common carriage service is "intrastate". The service provided by Petitioner is predominately local. Commission regulation of Petitioner's activities would not, under these circumstances, pose an undue burden on interstate commerce.
The "absence of federal [regulation]" of taxicab service, which Congress has recognized is predominately local in character, leaves this "subject . . . open to control by the State so long as [the Commission] act[s] within the restraints imposed by the Commerce Clause itself." City ofPhiladelphia v. New Jersey, 437 U.S. at 623. Commission regulation over Petitioner's taxicab service from Eppley Airport to Omaha would "effectuate . . . legitimate local public interest[s]" and the effects of such regulation "on interstate commerce are only incidental." Pike v. BruceChurch, Inc., 397 U.S. at 142. Indeed, as Petitioner is not subject to federal regulation, a regulatory void would exist if Petitioner's activities are not subject to regulation by the Commission. We therefore conclude that the Commission's exercise of jurisdiction over Petitioner's local, predominately intrastate common carriage activities, is permissible under the Commerce Clause.
We caution, however, that our conclusion is limited to determining that the exercise of Commission regulation
over Petitioner's common carriage activities would not contravene the Commerce Clause, if done so in a reasonable and evenhanded manner. As illustrated by the decision in BrowardCounty, there is a difference between the exercise of state regulatory power which may have some effect on interstate commerce, and state action prohibiting activity involving interstate commerce. As was the case in BrowardCounty, we do not think that, if Petitioner applied for authority to operate in this manner, the Commission could prohibit Petitioner from engaging in common carriage activity over this route, as this would place an improper burden on interstate commerce. Based on the decision in BrowardCounty, however, we believe that the Commission would be justified in undertaking regulation of Petitioner's activities with regard to matters such as "safety, operational fees, procedural safeguards, restrictions on the carrier to operations within its exceptional status, and insurance." 282 So.2d at 3. As was the case in Broward County, however, Petitioner has, at this time, not applied to the Commission for authority to operate.
V. CONCLUSION
Based on the foregoing, we conclude that Petitioner's activities are exempt from federal jurisdiction, and that no federal statute preempts the state's regulation of Petitioner's taxicab service. We further conclude that the Commission has authority under Neb. Const. art. IV, § 20, to regulate Petitioner's activities as a common carrier. Finally, we conclude that, under the facts presented, the Commission's exercise of jurisdiction to regulate Petitioner's inherently local activity, conducted predominately in Nebraska, would not unduly burden interstate commerce.
Sincerely,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
Approved:
Don Stenberg
Attorney General
[1] Arguably, Petitioner's activities may also be exempt from jurisdiction of the Secretary or the Board under the exclusion for "transportation of passengers by motor vehicle incidental to transportation by aircraft; . . . ."49 U.S.C. § 13506(a)(8)(A). Under prior case law interpreting this exemption, however, it has been held that, to constitute movement incidental to air transportation, the movement was required to be incidental to some particular air transportation, rather than the broad system of air traffic as a whole. Wycoff Co. v.United States, 240 F. Supp. 304 (D. Utah 1965). Seealso Yellow Cab Co. v. Broward County, 282 So.2d 1, 2-3
(Fla.Dist.Ct.App. 1973) (cab company's prearranged ground transportation of air passengers from airport to specified hotel constituted "transportation of persons . . . incidental to transportation by aircraft" under exemption to Interstate Commerce Act.) As we conclude that Petitioner's activities fall within the "taxicab service exemption", it is unnecessary for us to consider if the exemption for transportation incidental to air transport is applicable as well.