IN RE APPLICATION OF ACE GAS, INC. ACE GAS, INC., SUPERIOR, NEBRASKA, APPELLANT, IMPLEADED WITH ERNEST G. WROUGHTON, APPELLEE, V. PEAKE., INC., ET AL., APPELLEES.

168 N. W. 2d 373

Filed June 2, 1969. No. 37132.

C. E. Danley, for appellant.

Richard A. Knudsen, James E. Ryan, and Robert E. Powell, for appellees Peake, Inc., et al.

Heard before WHITE, C. J., CARTER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

Ace Gas, Inc., of Superior, Nebraska, filed an application with the Nebraska State Railway Commission for authority to acquire a certain portion of the intrastate motor carrier operating rights previously issued to one Ernest G. Wroughton. The application was protested by several motor carriers and railroads. The application was denied, and Ace Gas, Inc., has appealed.

Ernest G. Wroughton held operating authority under Application No. M-1794 and its supplements. Under M-1794, and Supplement No. 2, Wroughton held authority for commodities generally except those requiring special equipment over irregular routes from within a 10-mile radius of Wroughton's home to and from Nelson, Nebraska, and occasionally to and from Omaha and intermediate points; and sand and gravel and road and dam construction materials requiring the use of dump trucks between points in Nebraska over irregular routes. This authority was retained by Wroughton.

The authority sought to be transferred to Ace Gas, Inc., was that under Supplement No. 3 only. It was issued to Wroughton in 1948. That supplement authorizes the transportation of commodities generally including sand and gravel, over irregular routes from Fairfield, Nebraska, and within a 30-mile radius therefrom, to and from various points in the State of Nebraska at large; all shipments either originate or terminate within the 30-mile radius of Fairfield, Nebraska. Wroughton's home is located approximately 8 miles south of Fairfield, Nebraska, and 7 miles northwest of Nelson, Nebraska,

and both Fairfield and Nelson are within the 10-mile radial authority being retained by Wroughton.

Wroughton was 77 years old, and had been in the trucking business since 1928. At the time of the hearing here, he owned one 2-ton 1967 Chevrolet tandem truck. He testified that he had not had any tank equipment since 1954, when he discontinued the petroleum business. Petroleum and its products or commodities requiring the use of special equipment had not been transported under Wroughton's authority thereafter, until approximately 2 years before the hearing on this application.

Approximately 2 years before the hearing, Wroughton entered into certain arrangements with or through Everett Lillich. Lillich is the president and a substantial stockholder in Ace Gas, Inc., and several other corporations which are engaged in the buying and selling of various forms of petroleum products. Ace Gas, Inc., the applicant and appellant here, buys and sells propane gas and anhydrous ammonia at wholesale and also operates as a private carrier. Under one of the agreements, Ace Gas, Inc., leased certain described equipment to Wroughton. It was a written lease and the rental was 35 cents per mile. Wroughton also made an oral agreement to sell the authority involved here, Supplement No. 3, to Ace Gas, Inc., for the sum of $3,000. He also had an oral agreement to employ Everett Lillich, the president of Ace Gas, Inc., as manager for Wroughton. For approximately 2 years prior to the hearing, the equipment leased by Ace Gas, Inc., was operated under Wroughton's authority carrying propane gas, anhydrous ammonia, and fertilizers. The equipment was used sometimes for Ace Gas, Inc., as a private carrier and sometimes under Wroughton's authority as a common carrier.

After the arrangements with Lillich, the offices of the Wroughton trucking business were moved to the office of Ace Gas, Inc., in Superior, although Wroughton paid

no rent. A separate bank account was established by Lillich in which the revenues from the Wroughton trucking business were deposited. All checks on that account were signed by Lillich. Wroughton did not hire, pay, or direct any drivers, nor solicit the business. All directions and instructions to drivers and the dispatching of trucking equipment was done by Lillich. At the time of the hearing, Wroughton had already been paid the agreed purchase price of $3,000 for the authority, and the evidence shows no other payments to him, either from the separate bank account or otherwise. Lillich had not received any salary or compensation from Wroughton for services as "manager" of the operation. The financial statement of Ace Gas, Inc., for June 30, 1967, shows a common carrier permit as an asset of $3,000, although Ace Gas, Inc., had no common carrier authority on that date. Wroughton testified that he was consulted now and then about the business in some vague fashion. He testified that the shipments made during the period of the operation were transported in equipment owned by Ace Gas, Inc., and operated under his authority, and that he actually did not transport the commodities, but Ace Gas, Inc., did.

The Nebraska State Railway Commission found that the operations being conducted under the leasing arrangement were actually those of Lillich and Ace Gas, Inc., and resulted in a lease of Wroughton's Supplement No. 3 operating authority without the approval of the commission required by statute. It also found that the operating authority contained in Application M-1794, Supplement No. 3, duplicates the operating authority issued to Wroughton in Application M-1794, and to transfer the Supplement No. 3 operating authority to Ace Gas, Inc., would place two carriers in the field where only one carrier existed before, and the result would not be consistent with the public interest. The application was, therefore, denied.

The appellant's assignments of error are primarily

grounded on the contention that the action of the commission in denying the application was arbitrary and unreasonable.

The approval of the railway commission is required for any purchase, lease, operating control, or acquisition of control of the properties, certificates, permits, or any part thereof, held by motor carriers. After hearing, the commission must find that the transaction proposed will be consistent with the public interest and does not unduly restrict competition, and that the applicant is fit, willing, and able to properly perform the proposed service. If any of the certificates or permits, or any part thereof, to be transferred or leased are dormant, or if the transfer or lease will permit or result in a new or different service or operation as to territorial scope than that which is or may be rendered or engaged in by the respective parties, then the application can be granted only upon proof and finding that the transfer or lease is or will be required by the present and future public convenience and necessity. See § 75-318, R. S. Supp., 1967.

The principal issue raised throughout the hearings was whether the trucking business carried on under the agreements referred to was under the control of Ace Gas, Inc., and its president Lillich, or whether it was under the control of Ernest G. Wroughton, the certificate holder. We believe the evidence was more than sufficient to support the commission's finding that the operations conducted under the leasing arrangement were actually those of Lillich and Ace Gas, Inc.

The witnesses who testified in support of the application all based their testimony on the shipments and services performed during the 2-year period of operations described. Six of these seven witnesses for the applicant were employed either by the Superior-Deshler Propane Company, which has the same stockholders, officers, and directors as Ace Gas, Inc., or by Consumers Propane Service in which Everett Lillich has a one-

third stock ownership. The transcript of shipments relied on by Ace Gas, Inc., shows that 125 of the 162 shipments shown were to the Superior-Deshler Propane Company as consignee.

The evidence of the protestants was that they had not experienced any competition from Wroughton prior to the operations referred to. They believed Wroughton's authority, to the extent that it authorized transportation of bulk commodities and commodities requiring special equipment, was dormant. Protestants' evidence also indicated that the present and future public convenience and necessity did not require the transfer of the operating rights involved.

Here there is no question but that the Nebraska State Railway Commission was acting within the scope of its authority. On appeal to the Supreme Court from an order of the Nebraska State Railway Commission, administrative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

The issue of public convenience and necessity is ordinarily one of fact and where there is evidence in the record to sustain the Nebraska State Railway Commission's order, this court cannot say that it is unreasonable and arbitrary. Canada v. Peake, Inc., *ante* p. 52, 165 N. W. 2d 587.

The determination of what is consistent with the public interest or public convenience and necessity, is one that is peculiarly for the determination of the commission. If there is evidence to sustain the findings of the commission, this court cannot intervene. See Neylon v. Petersen & Petersen, Inc., 183 Neb. 813, 164 N. W. 2d 452.

The evidence here is amply sufficient to sustain the findings of the commission. The order of the commission

is not arbitrary or capricious, and it is therefore affirmed.

AFFIRMED.

SPENCER, J., participating on briefs.