IN RE APPLICATION OF E & B RIGGING & TRANSFER, INC. HOWARD N. DAHLSTEN, DOING BUSINESS AS DAHLSTEN TRUCK LINE, ET AL., APPELLEES, V. LLOYD HARRIS, DOING BUSINESS AS HARRIS TRANSFER, ET AL., APPELLANTS.

217 N. W. 2d 813

Filed May 2, 1974. No. 38855.

Peterson, Bowman, Coffman & Larsen, A. J. Swanson, C. Russell Mattson, and Joseph L. Krause, for appellants.

James E. Ryan and Richard A. Knudsen, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

Motion for rehearing was granted in this case and after reargument we conclude that the original opinion, found at 190 Neb. 652, 211 N. W. 2d 714, affirming the order of the Nebraska State Railway Commission, while correct in its result, was founded upon improper rationale. We therefore withdraw the prior opinion and substitute the following.

This is an appeal from an order of the Nebraska Public Service Commission. Rigging made application to purchase a certificate of public convenience and necessity of Harris. Herman and Dahlsten, who are carriers engaged in hauling, among other commodities, bulk cement and limestone, entered protests alleging that the Harris authority was dormant; that the present and future public convenience and necessity does not require the service authorized; that the transfer would result in the rendering of a new and different service not required by the public convenience and necessity; and that granting the transfer was not consistent with the public interest, all contrary to the provisions of section 75-318, R. R. S. 1943.

The operating authority in question had been issued in 1937 under the grandfather provisions and was later reissued in 1959 as follows: "SERVICE AND ROUTE OR TERRITORY AUTHORIZED: Road, dam, bridge and building contractors' tools, machinery, materials, equipment and supplies; houses, railroad cars and build-

ings, structural steel, heavy machinery and such other commodities which because of size, weight or shape require the use of special equipment in either transporting, loading, or unloading; (but not including liquids in bulk in tank vehicles or dry fertilizers in bulk in hopper type vehicles), between all points and places in Nebraska, over irregular routes."

The commission found that Harris had been guilty of a willful violation of the provisions of section 75-313, R. R. S. 1943, and an implementing regulation which provides: "No carrier, without first obtaining Commission approval shall . . . (b) discontinue in any part service authorized . . . under its certificate." The commission "revoked" the portion of the certificate "authorizing the transportation of cement, in bulk and bag, and limestone and limestone products." It then authorized the transfer of the authority with the following restriction: "RESTRICTION: That this certificate is restricted against the transportation of cement, in bulk or bags, limestone and limestone products, in bulk, and liquids, in bulk, in tank vehicles and dry fertilizers, in bulk, in hopper-type vehicles."

The record shows that Rigging desires to purchase the Harris authority because it seeks to compete with the protestants for transportation of cement and limestone. The two protestants, one or two other motor carriers, and the railroads are the only carriers engaged in such transportation. Dahlsten operates pursuant to a specific authorization for limestone products. Herman carries such products pursuant to an authorization for commodities generally. Both have large investments in specialized pneumatic equipped tank trailers which are necessary for the efficient carriage of the products in question. Harris has never, except on one occasion and that in 1966, then using a customer's equipment, hauled cement or limestone in pneumatic trailers. Harris did not actively solicit that business, but was

engaged in what is described as heavy hauling. He owned no specialized equipment for hauling cement and limestone. There is no evidence that he ever refused a request for service for the products in question. Applicant argues there were no requests because a monopoly in the service existed and there was a paucity of business. It is clear that no part of the value of his business is the result of investment in equipment for hauling cement or limestone or the use of his permit for such purposes.

Prior to 1965 the railroads possessed a monopoly over transportation of cement, for paper rates barred competition from motor carriers. The policy was modified in 1965 by the introduction of commodity rates known as "ex-rail rates" on cement. In 1966 the commission established competitive truck rates for cement. Ready Mix, Inc. v. Nebraska Railroads, 181 Neb. 697, 150 N. W. 2d 275 (1967). Herman began hauling cement in 1966. Dahlsten acquired his authority with reference to the products in question in 1970 and began hauling limestone that year. In 1971 despite active promotion there was little business and he had a bad year. Herman testified that the transfer of the certificate for the purposes for which the transferee desired to use it would adversely affect its business.

Applicant urges that a finding of "willful failure" is not supported by the evidence and is arbitrary and unreasonable because where there is a paucity of business and a monopoly exists there can be no willful failure in a case where the authorization is for commodities generally or a specific generic class of commodities, in this instance "road, dam, bridge and building contractors' . . . materials" over irregular routes, where the evidence discloses only a failure to haul one of the products falling in the general category. Applicant relies, as did a dissenting member of the commission, upon the principle that the certificate holders "are re-

quired to show only that they have rendered substantial service in the transportation of a representative number of commodities to a representative number of points within their authorized territory and that they have not abandoned or discontinued service, in whole or in part, either as to commodity or territory." Home Transportation Co., Inc.—Purchase—Clarkson & Clarkson, 93 M.C.C. 509 (1964). Applicant urges therefore that the record demonstrates no willful failure.

The cases cited by the commission and relied upon by us in our original opinion do not, in our judgment, support the proposition that a "willful violation" exists under the evidence in the record. Two of these cases, Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363, and Resler v. Nielsen & Petersen, Inc., 154 Neb. 624, 48 N. W. 2d 718, involved regular route authorities. The evidence there showed that the carriers ceased serving the route or a portion of it. The third case, Schmunk v. West Nebraska Express, Inc., 159 Neb. 134, 65 N. W. 2d 386, involved an irregular route authority and the evidence showed an abandonment of all service including disposition of the equipment which made service possible. A fourth case to which attention is called in the opinion, Canning v. McKay, 173 Neb. 103, 112 N. W. 2d 737, supports the position of the applicant. The authority involved authorized the carriage of commodities generally over irregular routes, but within a prescribed area. The evidence there showed that the failure to transport the regulated commodities during the year previous to the filing of the application was due to a paucity of business during the period and not due to any failure on the carrier's part. We there said: "But where, as here, the certificate holder is ready, willing, and able to perform the service authorized by his certificate, and does not perform such service through no fault of his own, the question of dormancy becomes a question

of fact under all the circumstances of the case." We conclude that there is no evidence showing a willful failure under section 75-313, R. R. S. 1943, and that therefore the order of the commission was in this respect arbitrary and unreasonable.

The order of the commission and our prior opinion and other findings of the commission are, however, supportable upon other grounds.

Section 75-318, R. R. S. 1943, defines the conditions for the various methods of transferring operating authority. Insofar as it is necessary to note in connection with the issue at hand, that section provides in part as follows: "Whenever a . . . purchase . . . is proposed, the carrier . . . seeking authority . . . shall present an application . . . ." After provision for notice and hearing, it states: "If, after such hearing, the commission finds that the transaction proposed will be consistent with the public interest and does not unduly restrict competition and that the applicant is fit, willing, and able to properly perform the proposed service, it may enter an order approving . . . such . . . purchase . . . of . . . certificates or permits *or the whole, or any part thereof, upon such terms and conditions as it shall find to be just and reasonable;* Provided, that if any of the certificates or permits proposed to be . . . transferred . . . are dormant the commission may approve . . . transfer . . . *only upon proof of and a finding that such . . . transfer . . . is or will be required by the present and future public convenience and necessity,* in the same manner as provided in section 75-311, and provided further, that if the proposed . . . transfer . . . will permit or *result in a new or different service* or operation as to territorial scope than that which is or may be rendered or engaged in by the respective parties, or, . . . *will tend to enlarge competition over that then existing,* the commission may approve such . . . transfer . . . *only upon the basis of proof* of and a finding that

the proposed . . . transfer . . . *is or will be required by the present and future public convenience and necessity,* in the same manner as provided in section 75-311. Any restrictions, qualifications, or conditions applicable to and contained in a particular certificate of public convenience and necessity or a permit at the time of the issuance thereof or thereafter made a part of such certificate or permit, . . . proposed to be merged, consolidated, transferred, or leased shall not be changed, altered, or removed without the proof required in section 75-311 for certificates and permits." (Emphasis supplied.)

The commission, in addition to its finding on willful failure, also found: (1) "The retention of the certificate of authority to truck limestone and cement could only lead to new competition in these fields of trucking for which there has not been a need in the past or is there shown a present or future public need for the retention of that service in the certificate under attack." (2) That Harris had performed services under the provisions of the certificate with reference to heavy hauling and that that portion was not dormant. (3) That the applicant was fit, willing, and able to perform services under the certificate. (4) That the transfer of the amended certificate will be consistent with the public interest and will not result in a new or different service. The evidence supports these conclusions and in our opinion the quoted sections of the statutes authorized the modification of the authority which is made by the commission previous to authorizing the transfer.

Our review is governed by the following principles: "The power of the Nebraska State Railway Commission to regulate common carriers is derived from Article IV, section 20, of the Constitution. Such powers are plenary and self-executing in the absence of specific legislation on the subject. . . . Where the Legislature enacts specific legislation implementing Article IV, sec-

tion 20, of the Constitution, the Nebraska State Railway Commission is subject to and governed by the provisions of such enactment. . . . On an appeal to the Supreme Court from an order of the Nebraska State Railway Commission administrative or legislative in nature, the only questions to be determined are whether the commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." Neuswanger v. Houk, 170 Neb. 670, 104 N. W. 2d 235. "The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Nebraska State Railway Commission. If there is evidence to sustain the finding of the commission, this court cannot intervene." Ace Gas, Inc. v. Peake, Inc., 184 Neb. 448, 168 N. W. 2d 373.

We held in Neuswanger v. Houk, *supra,* that the "question of dormancy, in case[s] where an application is made for transfer of operating rights, should be the same as where an order to show cause has been issued based upon that ground." We do not believe, however, that "willful failure" and dormancy can in all cases be equated. The same evidence that might support a finding of willful failure in the case of a regular route authority, for example, as in Union Transfer Co. v. Bee Line Motor Freight, *supra,* and Resler v. Nielsen & Petersen, Inc., *supra,* does not necessarily support such a finding in a case of irregular route authority authorizing carriage of commodities generally or a generic class of commodities where the demand for service is the critical factor and where the evidence shows an ability and willingness to serve. See, Home Transportation Co., Inc., *supra;* Canning v. McKay, *supra.*

Under the posture of this case where the complainants have alleged dormancy, the burden was upon them to establish the whole or partial dormancy of the authority. The burden of proving affirmative allegations is

on the party making them. Moritz v. Transcontinental Bus Lines, Inc., 153 Neb. 206, 43 N. W. 2d 603; 73 C. J. S., Public Utilities, § 53, p. 1120. The burden was then upon the applicant for transfer to show that despite such partial dormancy the transfer was required by the present and future public convenience and necessity. Neuswanger v. Houk, *supra.*

In this case because of the absence of non-competitive rates and the monopoly position of the railroads, Harris had no opportunity until at least 1966 to enter the bulk cement and limestone hauling fields. Others entered the field at or after that time and there was no demand for the service from him. His failure under these circumstances cannot be regarded as a willful failure.

. On the other hand, when he sought to transfer his certificate to a carrier who proposed to broaden the scope of service by performing a specialized carriage which Harris had not heretofore performed, even though not by willful failure, the commission was authorized and required under the provisions of section 75-318, R. R. S. 1943, to consider the public convenience and necessity in determining whether the transfer should encompass the entire authority or whether it should place restrictions upon it excluding the specialized services not used by Harris and not required by the present and future public convenience and necessity.

We have heretofore recognized, at least by implication, the authority of the commission to take cognizance of partial dormancy. Ace Gas, Inc. v. Peake, Inc., *supra* (lack of special equipment); Andrews Van Lines, Inc. v. Smith, 187 Neb. 533, 192 N. W. 2d 406 (specialized nature of service may require a different kind and quantum of proof to establish dormancy). We also noted on the first occasion we were called upon to consider section 75-318, R. R. S. 1943, that when the transfer of a certificate will result in a material change in a service previously offered under the certificate, the is-

sue of public convenience and necessity is to be considered by the commission. Caudill v. Lysinger, 161 Neb. 235, 72 N. W. 2d 684.

AFFIRMED.