IN RE APPLICATION OF GROENEWOLD.
E. RAYMOND GROENEWOLD, APPELLEE, v. BUILDING MOVERS, INC., ET AL., APPELLANTS.

247 N. W. 2d 629

Filed December 15, 1976. No. 40632.

Nelson, Harding, Marchetti, Leonard & Tate, Michael J. Ogborn, and Scott E. Daniel, for appellants.

Wightman & Fallesen, for appellee.

Heard before SPENCER, BOSLAUGH, and CLINTON, JJ., and HAMILTON and WINDRUM, District Judges.

CLINTON, J.

This is an appeal from an order of the Public Service Commission granting to E. Raymond Groenewold of Farnam, Nebraska, a certificate of public convenience and necessity as follows: "SERVICE AUTHORIZED: Transportation of houses and other buildings and component parts of buildings of all kinds in . . . Dawson, Gosper, Frontier, Hayes, Hitchcock, Furnance (sic), Red Willow Counties and Lincoln County east of Highway 83 and excluding the City of North Platte, Nebraska. *RESTRICTION:* Excluding commodities in bulk in tank type equipment." The appellant protestants are holders of certificates of public convenience and necessity authorizing the furnishing of services similar to those in the Groenewold authorization except as to area. Two of the protestants have statewide authority and

are located respectively at Hastings and York. Two others are located respectively at Kearney and North Platte and have limited territorial authority which overlaps in part the area encompassed in the Groenewold certificate.

The substance of the assignments of error made and argued by the protestants is as follows: (1) The evidence does not support the grant of authority to Groenewold and that, therefore, the action of the Nebraska Public Service Commission is arbitrary and unreasonable; and (2) the court erred in admitting into evidence exhibit 3 which is a list of the persons for whom Groenewold had performed building moving services, the charges made therefor, and the dates of services.

We will treat the last assignment first. Protestants contend that the admission of the exhibit violated subsections (f) and (g) of Rule 13 of the Rules of Commission Procedure pertaining respectively to Abstracts From Documents and Materials in Books, Papers, or Documents. We do not think that the exhibit can be properly characterized as an abstract of a document nor as a portion of books, papers, or documents within the meaning of the above rules. The list in question was simply an enumeration of the names of persons for whom the applicant had performed services during the period in question and the amounts paid for the services, as well as the dates the services were performed. These were ultimate facts, not necessarily provable by documents. The applicant's oral testimony showed that he had personal knowledge of the facts and laid an appropriate foundation for the admission of the list. The commission did not abuse its discretion in admitting the list. Neither does section 27-1006, R. R. S. 1943, have any application for the exhibit was not a summary of voluminous documents.

The principles applicable to a determination of the first assignment are as follows: "A certificate shall be

issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found after notice and hearing that the applicant is fit, willing, and able properly to perform the service proposed, and to conform to the provisions of sections 75-301 to 75-322.01 and the requirements, rules, and regulations of the commission thereunder and that the proposed service, to the extent to be authorized by the certificate, whether regular or irregular, passenger or property, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied." § 75-311, R. S. Supp., 1976. "On an appeal to the Supreme Court from an order of the Nebraska Public Service Commission, administrative or legislative in nature, the only questions to be determined are whether the commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." Dahlsten v. Harris, 191 Neb. 714, 217 N. W. 2d 813. See, also, Mills v. Nebraska Motor Carriers Assn., *ante* p. 159, 247 N. W. 2d 619. "The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Nebraska Public Service Commission. If there is evidence to sustain the finding of the commission, this court cannot intervene." Dahlsten v. Harris, *supra*.

The commission discussed the evidence, made specific fact findings, and then concluded: "1. That Applicant is fit, willing and able to perform the proposed service. 2. That the proposed service is in the public interest and will not unduly restrict competition. 3. That the proposed certificate of public convenience and necessity should read as follows: . . . (herein was set forth the authority as described in the first paragraph of this opinion). 4. That the above certificate should be issued."

The protestants attack the portion of the commis-

sion's findings that the proposed service is in the public interest and will not unduly restrict competition, contending particularly that the public convenience and necessity does not require an additional carrier and that the present carriers can and do satisfactorily meet the needs of the public.

An examination of the record indicates that in 1972 Groenewold purchased the equipment of one Howard Haynes who had been for some time engaged in the house-moving business and by whom Groenewold had been employed on a part-time basis. Haynes did not at any time hold a certificate of public convenience and necessity. When Groenewold acquired Haynes' equipment in 1972, he did not know that a certificate was required. At that time he made inquiries, apparently at the county road department of his county and the district office of the State Department of Roads, as to whether any permits were required and was informed by the persons of whom inquiry was made that they knew of no permits that were required. He then engaged in the house-moving business for a period of 3 years. Shortly before the filing of his application for a certificate of public convenience and necessity in this case, he apparently had a chance conversation with a retired house mover at McCook who held such a certificate and was told by him that a certificate was required. Groenewold then immediately applied for a certificate. The commission then directed that he cease building-moving services which he promptly did. Hearing was held and the order entered is the one appealed from to this court in this case.

We have examined the record before the commission and in our judgment it clearly shows substantial evidence to support the commission findings. It indicates that such services were in fact performed by Groenewold and his testimony was supported by a number of persons for whom services had been performed and whose opinions were elicited as to present and future

need. The record does not establish the extent or the period during which his predecessor had apparently engaged in unauthorized services. No complaint was made against Groenewold by any carrier until after he had filed the application.

The record further shows that one holder of a certificate operating out of McCook has died and apparently no attempt has been made to transfer this certificate; thus there are no operations thereunder. The evidence justifies a conclusion that the business of the protestants has not been damaged by Groenewold's operation as these businesses apparently have remained stable. As further justification, the record shows that Groenewold met a need by offering more prompt service than the protestants. The record contains at least one instance where one of the authorized carriers demanded substantial additional charges over and above the normal charge in order to render early service.

No objection was made to the evidence and testimony offered by Groenewold and his witnesses on the ground that it must be excluded because it consisted of evidence of services unlawfully rendered. However, the commission appears to have specifically considered that matter and its opinion includes the following: "The Nebraska Supreme Court has stated in Preisendorf Transportation Co., Inc. v. Herman Bros., Inc., 169 Neb. 693 100 N. W. 2d, 865 (1960): '. . . Law violations are not necessarily a bar to an approval of an application, if the public interest will best be served by approval of the transaction presented.' The highest Court of Nebraska, in the same opinion, stated, 'It should be emphasized that we do not condone these unauthorized operations (operating under invalid certificate) but under some conditions past unauthorized operations have been found not to operate as a bar to the granting of authority. Applicants should not be found unfit to perform the proposed operations because of their past unlawful operations since the violations were not willful and

since Applicants were willing to conform to the ICC regulations.'

"The Preisendorf case quoted language from an Interstate Commerce Commission case.

"All indications are that we have a similar case before us whereby Applicant did not knowingly or willfully violate the pertinent provisions of the Nebraska Motor Carrier Act, and further, it would appear that Applicant is now willing to conform to the governing regulatory statutes as well as this Commission's Rules and Regulations."

Although the protestants made no specific point that such evidence was inadmissible, they point out in apparent response to the commission's findings that in Preisendorf the applicant was operating under color of authority, and that in this case Groenewold had no color of authority and that hence the Preisendorf case is inapplicable. In Preisendorf the carrier had a certificate, but it was void because issued without notice and hearing. It is true that our holding in Preisendorf seems to be grounded upon the fact that the applicant had operated under color of authority and we cited several cases which held that past service may not be considered as evidence of need when such services have been unlawfully rendered and there is an absence of color of right. We there said, referring to decisions of the ICC. "Many of its decisions are cited in support thereof. Therein the commission came to the conclusion that: '* * * law violations are not necessarily a bar to approval of an application, if the public interest will best be served by approval of the transaction presented.' To like effect, see . . . (citations omitted). As stated in C. J. Skjonsby and Orville Heglie Common Carrier Application, supra: 'It should be emphasized that we do not condone these unauthorized operations but under some conditions past unauthorized operations have been found not to operate as a bar to the granting of authority.' The commission held: '* * * that appli-

cants should not be found unfit to perform the proposed operations because of their past unlawful operations since the violations were not wilful and since applicants were willing to conform to ICC regulations.' "

We then went on to hold: "Under the situation here presented, where appellee has for many years very satisfactorily rendered the service to the public, under color of authority, that it herein seeks authority to continue, we think these holdings apply. In view thereof, we find the evidence shows that appellee is fit, willing, and able to properly perform the services proposed; that it will fully conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943; and that it will, as it has in the past, fully conform to the requirements, rules, and regulations of the commission promulgated and issued thereunder. In view thereof, we do not think the commission acted either unreasonably or arbitrarily in so finding."

The Nebraska Public Service Commission derives its authority from Article IV, section 20, of the Constitution of Nebraska. Its powers are plenary and self-executing in the absence of specific restricting legislation. There is no statute which prohibits the commission from considering past unauthorized services in determining public necessity for the issuance of new authority.

We do not think that the performing of unlawful services necessarily renders an applicant unfit to receive a certificate at least where, as here, the record shows and the commission has found that there was no willful and intentional violation. Accordingly we cannot find that the action of the commission was unreasonable and arbitrary.

AFFIRMED.