IN RE APPLICATION OF PETROLEUM
TRANSPORT SERVICE, INC.
PETROLEUM TRANSPORT SERVICE, INC., APPELLANT, V.
RUAN TRANSPORT CORPORATION ET AL., APPELLEES.

315 N.W.2d 245

Filed January 22, 1982. No. 43644.

Scott T. Robertson of Peterson, Bowman & Johanns for appellant.

James E. Ryan of Ryan & Williams, P.C., for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

MCCOWN, J.

Petroleum Transport Service, Inc., filed its application seeking an extension of its present authority as a common carrier of fertilizer and fertilizer ingredients. The Public Service Commission denied the application and the applicant has appealed.

Petroleum Transport Service, Inc., presently holds Nebraska intrastate authority to transport anhydrous ammonia and fertilizer solutions from the Phillips Petroleum plant at Hoag, Nebraska, to all points and places in Nebraska over irregular routes. The applicant seeks to extend its present authority to authorize the transportation of fertilizer and fertilizer ingredients between all points in Nebraska over irregular routes. Applicant also holds interstate authority and Iowa authority. If the requested extension of authority were granted, applicant intends to purchase additional equipment as necessary and provide service both during the peak season and the off-season. There is

no dispute that the applicant is fit, willing, and able to perform the proposed service. Several common carriers presently providing such common carrier services filed protests.

The evidence at the hearing before the Public Service Commission established that there is a peak season for transportation of fertilizer products which occurs sometime during March, April, and May. The length of time and the extent of demand vary, dependent upon the weather and other conditions. During the peak season more than half of the total yearly volume of fertilizer and fertilizer products is shipped.

Witnesses all indicated that there was a shortage of equipment to provide service during the peak season. Except during the peak season, fertilizer carriers have idle equipment. Virtually all the witnesses who testified in support of the application referred to instances of refusals of service which occurred during the peak season and essentially these witnesses testified that they supported the application in order to enhance the availability of equipment during the peak season. The evidence shows that the fertilizer shippers allocate their business during the off-season among the carriers, generally on a pro rata basis according to the amount handled by the particular carrier during the peak season.

The protestants expressed concern that their off-season business would be detrimentally affected by an extension of applicant's authority. The applicant's shipper witnesses testified that they anticipated a substantial growth in the manufacture and use of fertilizer and that the shippers' use of the applicant's service, if authorized, would not divert business from the existing fertilizer carriers. These shipper witnesses also testified that the need for equipment was small during the off-season.

Following the hearing, the Public Service Commission found that present carriers cannot fulfill the need for transportation of fertilizer and fertilizer

solutions during the peak season each calendar year; that there was never enough equipment during the peak season and there is too much equipment during the remainder of the year; that if the application were granted the protestants would lose shipments during the off-season; and that protestants need the off-season loads to help pay the high cost of equipment. The commission found that the proposed service was not required by the present or future public convenience and necessity and denied the application.

The applicant contends that the denial of the application was arbitrary and capricious, and is not supported by substantial evidence in the record. Applicant's position is that there is no need to prove that the service of existing carriers is inadequate, and that a showing that the proposed additional service will better serve the public is all that is required. The applicant also contends that the economic condition of the existing carriers will not be harmed if the application is granted and that increased competition would be in the public interest.

Neb. Rev. Stat. § 75-311 (Reissue 1976) requires an otherwise qualified applicant to show "that the proposed service . . . is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

The burden is on the applicant to show that the proposed service is required by public convenience and necessity. This court has consistently held that in determining the issue of public convenience and necessity, controlling questions are whether or not the operation will serve a useful purpose responsive to a public demand or need; whether or not this purpose can or will be served as well by existing carriers; and whether or not it can be served by the applicant in a specified manner without endangering or impairing the operations of existing carriers, contrary to the public interest. *In re Application of Greyhound Lines, Inc.*, 209 Neb. 430, 308 N.W.2d 336 (1981).

The issue of public convenience and necessity is ordinarily one of fact, and where there is evidence in the record to sustain the Public Service Commission's order, this court cannot say that it is unreasonable and arbitrary. The determination of what is consistent with the public interest, or public convenience and necessity, is one that is peculiarly for the determination of the Public Service Commission. If there is evidence to sustain the finding of the commission, this court cannot intervene. *Ace Gas, Inc. v. Peake, Inc.*, 184 Neb. 448, 168 N.W.2d 373 (1969). In the case at bar the evidence in the record supports the findings of the commission and the denial of the application was not arbitrary or capricious.

AFFIRMED.

WHITE, J., participating on briefs.