VILLAGE OF LOUISVILLE, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, A CORPORATION, APPELLANT.

129 N. W. 2d 454

Filed July 3, 1964. No. 35622.

Mason, Knudsen, Dickeson & Berkheimer, for appellant.

Lloyd E. Chapman, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission directing the reopening of a crossing of the Chicago, Burlington & Quincy Railroad in the village of Louisville, Nebraska, at a point described as the Cherry Street crossing.

On November 30, 1962, the village of Louisville filed its complaint with the commission pursuant to section 75-427, R. R. S. 1943, praying that the commission direct the opening of a road across the railroad's right-of-way at the Cherry Street crossing which had been closed by the railroad company in 1959. It was the contention of the village that a road had existed at the point in question for 50 years and that the village had obtained a prescriptive right to a street crossing which the railroad company was required to keep open. The railroad company denied the existence of any prescriptive right, asserted the dangerous character of a crossing on Cherry Street extended, and claimed that a crossing at the disputed point was not needed and would materially interfere with its operation of trains.

The evidence shows that Cherry Street is a north and south street which is dedicated and platted as a street to the south edge of the railroad company's right-of-way where it intersects First Street, an east and west street. There is evidence by the village that a road has existed across the railroad right-of-way from the intersection of Cherry and First Streets for a period of 50 years or more. The railroad company's evidence is

to the effect that a road has existed in this area as a means of access to freight and passenger depots, and other railroad facilities, which road has changed in location as railroad facilities have changed over the years. The last change was made in 1954. In 1959 the railroad company raised its tracks and removed the planking and ballast betwen the rails. In 1959 it placed barricades across the road on the north and south sides of its tracks, thereby denying the use of the road to the public. For the purpose of this opinion we find only that the evidence is very conflicting as to whether or not the village has obtained an easement by prescription across the railroad right-of-way. The primary issue is whether or not the commission has jurisdiction to adjudicate the question as to whether or not an easement by prescription has been obtained by the village as alleged.

The record is devoid of any evidence that a street or road was ever platted, dedicated, or created in the manner authorized by law, other than the contention that a public road has been acquired by prescription.

The commission was created and its powers and duties defined by Article IV, section 20, Constitution of Nebraska. Chicago & N. W. Ry. Co. v. County Board of Dodge County, 148 Neb. 648, 28 N. W. 2d 396. Such constitutional provision provides in part: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

The Legislature, by section 75-219, R. S. Supp., 1961, specifically defined the powers of the commission as they relate to railroad crossings, as follows: "The State Railway Commission shall have jurisdiction over all crossings of highways outside of incorporated villages, towns and cities, both public and private, across, over

or under all railroads in the State of Nebraska, * * *."
The authority granted the commission by the foregoing
section is by express terms limited to country roads,
and has no application to streets in villages and cities.

In Chicago, R. I. & P. Ry. Co. v. Nebraska State Rail-
way Commission, 88 Neb. 239, 129 N. W. 439, this court
had a somewhat similar case before it. In that case the
village of Hallam condemned a right-of-way for a vil-
lage street over the right-of-way and railroad tracks of
the Rock Island railroad. Subsequently a complaint was
filed with the commission to compel the railroad com-
pany to open up the public street and place a crossing
over its right-of-way and tracks to make it available for
public use. The commission sustained the application.
This court, in reversing the commission, said: · "In the
instant case, if the proceedings in condemnation are
valid, the village has an adequate remedy by mandamus,
one it will be compelled to pursue should the order of
the commission be affirmed and the railroad build the
crossing, but refuse to permit travel over its right of
way." The holding of the court is summarized in the
court's syllabus as follows: "The state railway com-
mission has no authority to order a railway company to
construct a crossing over its railway at a point within
the limits of a village where no street has been opened."
See, also, State ex rel. Jensen v. Omaha & S. I. Ry. Co.,
103 Neb. 40, 170 N. W. 496.

We choose, however, to resolve the case on different
grounds. Title to real estate, including the determina-
tion of the existence of easements, and the condemnation
of land for easement purposes are judicial matters within
the jurisdiction of the courts of this state. We find no
authority in the statutes for the commission to hear and
determine such questions. The powers of the commis-
sion are regulatory in nature and the judicial powers
lodged in the commission are remedial of its regulatory
powers. The hearing of a case to determine whether or
not an easement by prescription exists is not regulatory,

and not within the jurisdiction of the commission under its general powers or by express terms.

This conclusion is supported by the following sections of the statutes. Section 75-428, R. R. S. 1943, provides: "The provisions of sections 75-219, 75-220, 75-221, 75-426, 75-427 and 75-429 shall not be construed as a limitation on the powers of the State Railway Commission which have heretofore been granted, but as supplemental and additional thereto. The powers herein granted shall not be construed as extending to the projection of a new public highway crossing or to the abandonment of an existing public crossing." It was subsequently provided by sections 75-430, 75-431, and 75-432, R. R. S. 1943, that the commission shall have power to hear applications for changes, alterations, relocations, or construction of crossings on highways outside of cities and villages. The intent of the statute was to withhold any such authority from the commission as to crossings within a city or village. Chicago & N. W. Ry. Co. v. County Board of Dodge County, *supra*.

The village cites many statutes with reference to the powers of the commission in regulating railroads. The discussion of these statutes would unnecessarily extend this opinion. Suffice it to say that they are primarily regulatory statutes which have no application to the situation that is presently before the court. Under these statutes the commission may prescribe regulations for the safety and convenience of the public, including safety regulations in the construction and maintenance of public crossings, the speed of trains in congested areas, the regulation of passenger and freight depots, and the like. Such statutes provide for the filing of complaints with the commission and the procedure for their disposition. It is axiomatic, however, that such procedural statutes have application only to matters over which the commission is invested with jurisidiction.

The village attempts to distinguish Chicago, R. I. & P. Ry. Co. v. Nebraska State Railway Commission, *supra*,

496

on the theory that the Cherry Street crossing had been open to the public for more than 50 years and that it was therefore an open street not within the rule of that case. The difficulty with this contention is that it assumes that the crossing was open because of an easement by prescription, which was one of the very issues heard by the commission. The village is in no position to urge the disputed claim of an easement by prescription as a basis for lodging judisdiction in the commission, even if the existence of an established easement would suffice to lodge jurisdiction in the commission, a question about which we have considerable doubt. The rights of the village of Louisville on the question of the existence of an easement by prescription are no different than those of any other person or entity. The mere fact that a purported easement by prescription crosses the right-of-way and tracks of a railroad company does not have the effect of lodging jurisdiction in the railway commission.

We conclude that the commission is without power to hear and decide the rights of persons in real property, that applicable statutes do not purport to grant such authority, and that the commission's order finding that an easement by prescription existed is void and of no force and effect. The order of the commission is reversed and the complaint of the village of Louisville is dismissed for want of jurisdiction in the commission.

REVERSED AND DISMISSED.