IN RE APPLICATION OF AUBREY ALLEN ET AL.
AUBREY ALLEN ET AL., APPELLANTS, v. OMAHA TRANSIT CO.,
INC., APPELLEE.

187 N. W. 2d 760

Filed June 18, 1971.   No. 37991.

James E. McShane and Howard Kaiman, for appellants.

Robert A. Skochdopole and William T. Oakes of Kennedy, Holland, DeLacy & Svoboda, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The issue in this case is whether the Nebraska State Railway Commission, hereinafter referred to as the Railway Commisison, may summarily deny an application for a reduction of rates without holding a hearing

specifically requested by the applicants senior citizens of Omaha, Nebraska. The Railway Commission denied the application and denied the applicants an opportunity to be heard before the Railway Commission. We reverse the Railway Commission's order for failure to hold a hearing.

The applicants are senior citizens in the City of Omaha, Nebraska, and filed this application before the Railway Commission requesting a special rate for senior citizens over the age of 62 years during specified hours during the week. The proposed fare to be charged was 20 cents per ride with no charge for transfers. It was requested that the rate be instituted for 1 year.

At the outset it should be clearly pointed out that the issue here is not the determination of the merits of such a request or whether such a classification of "senior citizens" over the age of 62 years is a proper one that may or may not be made by the Railway Commission. The specific issue before this court is whether the Railway Commission should have given the applicants an opportunity to be heard. A notice of public hearing on the application was given. Prior to the time of the holding of the hearing according to the notice, and after receiving an opinion from the Attorney General of Nebraska that the Railway Commission was without authority to fix such a classification and to require reduced fares for any special class of passengers, the Railway Commission entered an order on December 7, 1970, dismissing the applicants' application for lack of jurisdiction and subsequently overruled applicants' motion for a hearing according to the terms of the public notice.

At common law, common carriers were required to carry passengers or freight without "unjust" discrimination. Jurisdiction in the Railway Commission to inquire into allegations or complaints about unjust discrimination in the charging of fares by common carriers is founded in the Constitution of Nebraska, Article X, section 7, which states: "The Legislature shall pass

laws to correct abuses and prevent *unjust* discrimination and extortion in all charges of express, telegraph and railroad companies in this state and enforce such laws by adequate penalties to the extent, if necessary for that purpose, of forfeiture, of their property and franchises." (Emphasis supplied.) In accordance with this section, the Legislature delegated this general constitutional power to inquire into discriminatory rates to the Railway Commission. Section 75-126, R. S. Supp., 1969, provides: "(1) Except as otherwise provided in this section, no common carrier shall:

"(a) Charge, demand, collect, or receive from any person a greater or less compensation for any services rendered than it charges, demands, collects, or receives from any other person for doing a like or contemporaneous service;

"(b) Make or give any undue or unreasonable preference or advantage to any particular person; * * *

"(2) Nothing contained in this section shall prohibit any common carrier from, and no common carrier shall be subject to any fine, penalty or forfeiture, for performing services free or at reduced rates to:

"(a) The United States, the State of Nebraska, or any governmental subdivision thereof;

"(b) Any person transporting property to and from fairs and expositions for exhibition thereat;

"(c) The employees, both present and retired, of such common carrier;

"(d) Any person wherein the object is to provide relief in case of any calamitous visitation;

"(e) Any person transporting property for charitable purposes; or

"(f) Ministers and others giving their entire time to religious or charitable work."

It is clear that exclusive power and jurisdiction to fix the rates of common carriers and to determine all matters with relation to unjust discrimination as to fares and rates is vested in the Railway Commission. It is

further clear that the Legislature has delegated this power by setting up rather precise guidelines, standards, and principles to guide the Railway Commission in its deliberations. The Railway Commission had jurisdiction of the subject matter of the application filed by the applicants, and it appears that in entering the order of dismissal it was exercising its quasi-judicial power to make determinations of fact and law, and enter a judgment disposing of the merits of the application. This observation is necessary in this case because in Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756, we held that the Railway Commission generally exercises legislative, administrative, and judicial powers. It is clear from the nature of the application and the authority sought to be invoked, the power the Railway Commission was exercising here was quasi-judicial or judicial in nature.

From what we have said, it appears clear, therefore, that the Railway Commission did, without holding a hearing, exercise its judicial power to determine the facts and the law and enter a judgment of dismissal.

The precise and only issue presented in this case is whether applicants were entitled to a hearing of some nature before the Railway Commission. We have no doubt, in proper context, that legislative or administrative power may be exercised without the holding of a hearing and an opportunity to be heard. But here the Legislature has properly delegated judicial power to the Railway Commission. It has required the Railway Commission to inquire into and to determine the facts and make lawful disposition of applications of citizens and carriers alike. The application here invoked the Railway Commission's power to determine the facts, to apply the law, and to enter a judgment thereon. The rules and regulations of the Railway Commission itself set up an orderly procedure by which such applications could be made and the matter brought to the attention of the Railway Commission with full opportunity to be

heard either on questions of law or questions of fact, if such there may be. It appears clear that once the judicial or quasi-judicial powers of the Railway Commission are properly invoked, according to the authorized rules and regulations which the Railway Commission itself has promulgated, its judicial power may not be exercised summarily and without hearing the adversary parties to such applications.

We observe that the Attorney General's opinion, which was apparently the basis upon which the Railway Commission acted, does not say that the Railway Commission is without jurisdiction of the subject matter of the act, or that it is barred from holding a hearing on the subject matter of reduced fares for special classes of passengers. It states, in substance, that if the fact allegations are such as in the application, the Railway Commission could not properly reach a final result which would require such reduced fares, because of the specific prohibitions of the applicable statute. But it seems to be clear that the applicants are entitled to a hearing of some nature upon the very issue of whether the facts as stated in the application could warrant relief. We also observe that the summary denial of this application prevents the consideration by the Railway Commission of any possible amendments or qualifications which could bring it within the terms of the statute, and effectively prevents the uncovering of any related or collateral facts that are not recited in the application or considered by the Attorney General in his opinion. The Railway Commission, pursuant to its rules and regulations, did issue a notice and did schedule a hearing in this matter. The applicable statute, section 75-110.01, R. S. Supp., 1969, provides in part: "After notice of an application or petition has been given as provided by the rules for notice, the commission may process the application or petition without a hearing by use of affidavits if the application or petition is not opposed." We observe that the disposition of this application was done without

the use of affidavits and that the application was opposed. The statement in the applicable statute itself demands from the Railway Commission that a hearing be granted under these circumstances. The statute, section 75-110.01, R. S. Supp., 1969, provides that the Railway Commission shall not deny an application or petition of a common carrier until after it has either given the applicant a hearing thereon, or received the applicant's affidavits and made them a part of the record. We therefore hold that the Railway Commission should have held the hearing, already scheduled under its rules and regulations and the notice issued, to enable the parties to appear and present whatever questions of law or issues of fact which the Railway Commission might have determined, at the time of the hearing, were necessary and proper to a final determination of the issues presented.

We observe that the Railway Commission's order summarily denying the hearing effectively prevented a presentation to it of further and additional facts than those alleged in the application and any request for an appropriate amendment to embrace in the application any further facts that the applicants might seek to develop.

We point out that our holding and decision herein is narrow in scope. We do not determine or hold that there is any merit to the applicants' present application of any nature whatsoever. It would appear from the face of the application that it is totally without merit and under the applicable statute applying to the subject matter, that is, common carrier's rates, the Railway Commission is without power to grant reduced rates on the basis of the facts presented. But we do say that the Railway Commission should have held a hearing that it did, in fact, schedule under its own rules and regulations.

The Railway Commission's order denying a hearing is reversed.

REVERSED.

SPFNCER, J., dissenting.

The majority opinion herein requires the Nebraska

State Railway Commission to engage in an exercise in futility. At this point in this controversy I can see no escape from the mandatory application of subsection (1) of section 75-126, R. S. Supp., 1969, forbidding discrimination between persons, nor any escape from the conclusion that the application does not contain facts bringing it within the exclusions in subsection (2) of section 75-126, R. S. Supp., 1969.

McCOWN, J., concurring in result.

Both the majority opinion and the dissent assume, either impliedly or implicitly, that the Nebraska State Railway Commission has no power or authority to order the defendant to establish a special rate classification for off-peak periods for persons over 62 years of age. The foundation for that legal conclusion rests on the assumption that any classification of persons for reduced rates, except for those persons described in subsection (2) of section 75-126, R. S. Supp., 1969, is illegal and discriminatory. That conclusion I do not accept.

Two very obvious classifications of persons who are not mentioned at all in section 75-126, R. S. Supp., 1969, are children and students. In the case of children, the "discrimination" is based solely on age. In the case of students, the "discrimination" is based on occupation. There is no dispute on the part of anyone that the Railway Commission has authority over such rates once established, but the argument is that the authority exists only when the carrier voluntarily established the classification. This distinction in interpreting a statute prohibiting discrimination simply doesn't fit. Particularly is this so where the Railway Commission must specifically approve any rates established by any carrier for the carriage of any classifications of persons or property. It seems clear that a classification limited to persons over 62 years of age, and to off-peak periods in time, is not on its face obviously and conclusively unreasonable and unjustified.

The preferences or advantages aimed at by section 75-

126, R. S. Supp., 1969, are only undue or unreasonable ones. A classification of persons which is justified or reasonable ought not to be deemed illegal simply because a carrier has not voluntarily established it.

It is true that the Railway Commission has no authority to order any rate which is not compensatory. That fact remains for evidence, but it should not be predetermined nor should it affect the jurisdiction or the power and authority of the Railway Commission over the establishment of rates and classifications for the carriage of passengers.