IN RE APPLICATION No. 30466.
REVEREND JOSEPH C. MYERS ET AL., APPELLEES, v. THE BLAIR TELEPHONE COMPANY, A CORPORATION, APPELLANT.
230 N. W. 2d 190

Filed May 29, 1975. No. 39854.

56

John R. O'Hanlon of O'Hanlon & Martin, for appellant.

No appearance for appellees.

Bert L. Overcash of Woods, Aitken, Smith, Greer, Overcash & Spangler, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This action was initiated by 100 subscribers who are on the Kennard, Nebraska, exchange, against the Blair Telephone Company, hereinafter referred to as company. The application, filed February 12, 1974, asked for a determination of a dispute between them and the company concerning charges made for local exchange service which they alleged was totally inadequate. A public hearing was held May 16, 1974. The Public Service Commission, hereinafter called commission, entered its order on September 16, 1974. After extensive findings which sustain the complaint that the service rendered by the company was woefully inadequate, the commission decreed substantially as follows:

1. That the local main station rates at the Kennard, Nebraska, exchange of the Blair Telephone Company be reduced by 60 percent effective January 1, 1974, and to continue at such level until the company proves to the commission that the service is adequate.

2. That the Blair Telephone Company complete the installation of all one-party service at Kennard on or before March 1, 1975, and report to the commission

monthly as to construction progress, including the funds expended therefor, and the reason for any extension of time granted to the contractor by the company.

3. That the company report to the commission monthly showing the summary of reports of trouble at the Kennard exchange.

4. That the company report to the commission immediately any outages at the Kennard exchange affecting 20 percent or more of the subscribers.

5. That the company report to the commission monthly the total number of man hours expended within the Kennard exchange for repair services, and the total number of hours spent for routine maintenance.

6. That the company assign numbers to its long distance, information, and trouble operators within 15 days from the date of the order.

The company sets out 11 assignments of error. In its brief, however, all its discussion is centered on the 60 percent reduction in rate made retroactive to January 1, 1974. We affirm.

Article IV, section 20, Constitution of Nebraska, provides for a Public Service Commission. So far as material herein, the Constitution provides: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

Section 75-109, R. R. S. 1943, provides: "The commission shall have the power to regulate the rates and services of, and to exercise a general control over, all common carriers, which term is hereby defined as all carriers, including contract carriers, engaged in the transportation of freight or passengers for hire, or furnishing communication services for hire in Nebraska intrastate commerce." This essentially is merely a reiteration of the constitutional provision.

Section 75-111, R. R. S. 1943, provides: "The commission shall investigate any and all cases of alleged neglect or violation of the laws of this state by any common carrier subject to the provisions of sections 75-101 to 75-801, doing business in this state, or by the officers, agents or employees thereof, and take such action with reference thereto as may be provided by law."

Section 75-119, R. R. S. 1943, provides, so far as material herein: "When any common carrier or other interested person petitions the commission alleging that a rate * * * is unreasonably high or low, unjust or discriminatory, notice shall be given to the common carriers affected in accordance with the commission's rules for notice and hearing."

Section 75-126, R. R. S. 1943, provides, so far as material herein: "(1) Except as otherwise provided in this section, no common carrier shall: * * *

"(c) subject any type of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever; * * *."

Section 75-133, R. R. S. 1943, provides: "Whenever the commission has reason to believe that any common carrier is violating any of the provisions of sections 75-101 to 75-801, it shall at once institute an inquiry and fix a time and place for hearing thereon, upon its own motion, and shall make any order or orders as may upon such hearing be deemed just and reasonable."

From the above statutory provisions it is evident that the commission has the power to regulate the rates and services of the company and to exercise a general control over all telephone companies. This includes the authority to investigate any and all cases of inadequate services and to provide any available remedy.

So far as we have been able to determine, the Legislature has made no specific provision which would cover the situation before us. In the absence of specific legislation, the powers and duties of the commission, as enumerated in the Constitution, are absolute and un-

qualified. State ex rel. State Railway Commission v. Ramsey (1949), 151 Neb. 333, 37 N. W. 2d 502. Such powers are plenary and self-executing, in the absence of specific legislation on the subject. Dahlsten v. Harris (1974), 191 Neb. 714, 217 N. W. 2d 813. Section 75-127, R. R. S. 1943, does provide for criminal penalties covering violations by any common carrier or officer, agent, or employee, but we do not interpret this to be exclusive.

The company first argues that a public utility is entitled to rates for its service that may normally be expected to yield a fair return upon the reasonable value of the property that is being used for public convenience. We agree, and have so held on many occasions, but that is not the question before us. Under Article X, section 7, Constitution of Nebraska, and section 75-126, R. R. S. 1943, exclusive power and jurisdiction to inquire into allegations or complaints, concerning unjust discrimination in the charging of rates, is vested in the Public Service Commission. See Allen v. Omaha Transit Co., Inc. (1971), 187 Neb. 156, 187 N. W. 2d 760. The company was operating under rates previously set by the commission. We must presume these rates gave the company just compensation or a fair return upon the reasonable value of its property at that time. We must also presume these rates were set to provide reasonably adequate telephone service. The company herein was not attempting to get a further increase. It was attempting to prove the adequacy of its service for the agreed rates.

The company's second contention is that the commission in rendering a decision reducing rates must include findings of fact upon which that decision is based. The commission filed detailed findings, including a finding of 2,041 trouble reports over an 11-month period. It also specifically found that investigation by the commission staff subsequent to the hearings did not reveal any improvement in the high level of trouble reports. There is no merit to the company's second argument.

Thirdly, the company argues that the power of the commission to regulate and control telephone companies is limited by the consideration that it is not the owner of the property of the utility or clothed with the general power of management incident to ownership. True, the commission has no authority to supplant the managers or directors of public utilities or to substitute its discretion for theirs. However, the commission is empowered to, and was created with the intention that it would, regulate public utilities insofar as the powers and operations of such utility affect the public interest and welfare. Consequently, it does have authority to supervise the operation of a utility to the extent of seeing that the utility provides the service for which it is exacting payment.

It is the duty of the commission to see that the utility is not unjustly enriched by actions inimicable to public interest. As the United States Supreme Court said almost 60 years ago: "Corporations which devote their property to a public use may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render." New York & Queens Gas Co. v. McCall (1917), 245 U. S. 345, 38 S. Ct. 122, 62 L. Ed. 337. We paraphrase by saying they may not continue to exact rates set for reasonably adequate service for service that wholly fails to meet that standard.

A public utility is obligated to serve all its ratepayers fairly and without undue discrimination. In seeing that the utility meets this obligation, the commission is not directing how funds of the utility are to be used. Rather, it is requiring the utility to render the service for which the rate was set, or, as was done here, to refund a portion of the rate charged for the inferior service. As we said in Furstenberg v. Omaha & C. B. St. Ry.

Co. (1937), 132 Neb. 562, 272 N. W. 756: "The primary object of the regulation of public utilities by the railway commission is not to establish a monopoly or to guarantee the security of investment in public service corporations, but, first and at all times, to serve the interests of the public."

The company's last assignment of error is that its rate of return should not be confiscatory so as to deprive the utility of property without compensation. We fully agree, and have so held. As a corollary thereto, however, neither should the utility be permitted to confiscate the ratepayers' fees without giving the reasonably adequate service for which those rates were set. The commission can no more permit the utility to have confiscatory rates for the service it performs than it can compel a utility to provide service without just and equitable compensation. As a matter of elemental justice, consumers of utility services are entitled to the same protection against confiscation of property or arbitrary action on the part of the utility as are the utilities.

Amicus curiae call our attention to a Missouri case, Straube v. Bowling Green Gas Co. (1950), 360 Mo. 132, 227 S. W. 2d 666, 18 A. L. R. 2d 1335, holding the commission has no authority to promulgate a refund. That case is not in point here. It is a minority decision and involves a refund from a supplier. Additionally, under Missouri law, its commission is strictly an administrative agency. Generally, unlike some public service commissions, the Nebraska Public Service Commission, in the different aspects of its constitutional functions, exercises legislative, administrative, and judicial powers. Allen v. Omaha Transit Co. (1971), 187 Neb. 156, 187 N. W. 2d 760. The powers of the commission are regulatory in nature and the judicial powers lodged in the commission are remedial of and ancillary to its regulatory powers. Village of Louisville v. Chicago, B. & Q. R.R. Co., (1964), 177 Neb. 491, 129 N. W. 2d 454.

In our view of this proceeding, if the rates for the

Kennard service were reasonable when set originally by the commission, and for the purpose of this proceeding we must assume they were, then we must agree with the commission that the consumers were vastly overcharged for the services they were actually receiving.

All the powers and jurisdiction of the Public Service Commission must be found within the constitutional provision creating it. This provision should not be construed so narrowly as to defeat its purpose. Rather, it should be liberally construed to effectuate the purpose for which the commission was created, which is primarily to serve the public interest. It seems to us to be axiomatic that the commission, as a part of its power and duty to establish rates which will provide an adequate return and to regulate the services of utilities, must have the authority to compel the utility to render the service for which it induced the commission to fix an adequate rate. We hold that inherent in the power of the commission is its right to force a utility to give the service for which its rates have been fixed. As a corollary to that power must be the right, where the service is woefully inadequate, to require the utility to rebate some portion of the rates set for reasonably adequate service. To hold otherwise would permit a utility to profit by its own intentional or unintentional neglect. The record indicates that the service was so inadequate in this instance that the remedy chosen by the commission was the only one which would keep the company from confiscating the rates paid by the ratepayers for wholly inadequate service.

The order of the Public Service Commission on the record herein is not arbitrary or unreasonable, and is affirmed.

AFFIRMED.