REQUESTED BY: Senator Chris Beutler Nebraska State Legislature
You have requested our opinion regarding the effect of a pending legislative resolution (LR 41CA) which proposes to amend the Nebraska Constitution by eliminating all references to the Public Service Commission [the "Commission"].[1] LR 41CA, if adopted, would remove references in the Constitution to the Commission, and would repeal Neb. Const. art. IV, § 20, the constitutional provision creating the Commission. Your question is whether, if LR 41CA is placed on the ballot and approved by the voters, the statutory authority of the Commission to operate will continue, or whether removal of the Commission from the Constitution will "effectively eliminate its authority to operate". You also ask whether rules and regulations which have been adopted by the Commission will remain operative if the resolution is adopted.
[1] The resolution would also remove references in the Constitution to the "Railway Commission", the name by which the Commission was known before its designation as the Public Service Commission.
Article IV, § 20, of the Nebraska Constitution, currently provides:
 There shall be a Public Service Commission, consisting of not less than three not more than seven members, as the Legislature shall prescribe, whose terms of office shall be six years, and whose compensation shall be fixed by the Legislature. Commissioners shall be elected by districts of substantially equal population as the Legislature shall provide. The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision.
Commission authority over common carriers "is rooted in legislative, judicial, and electoral activities during the early 1900s." State ex rel. Spire v. NorthwesternBell Tel. Co., 233 Neb. 262, 274, 445 N.W.2d 284, 292
(1989). "In the election of November 6, 1906, the forerunner of Neb. Const. art. IV, § 20, was added by amendment to the state Constitution, an amendment which created the `State Railway Commission' with authority to regulate `common carriers'."Id. at 274, 445 N.W.2d at 292-93. "Before the constitutional amendment establishing the [Commission], the Legislature was the sole repository for control over" common carriers. Id. at 275, 445 N.W.2d at 293. "The constitutional amendments of 1906 and 1907 extended to the [Commission] the regulatory power which was previously exercisable only by the Legislature." Id.
 Briefly stated, the railway commission [Commission] is created by section 20, article IV, of the Constitution. It is granted powers and duties which include the regulation of rates, service, and general control of common carriers as directed by the Legislature. In a field where the Legislature has not acted, the commission is authorized to exercise the powers and perform the duties enumerated in the constitutional provision. This means, of course, that the Legislature may properly enact specific legislation limiting the scope of the commission's powers.
Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280,283, 34 N.W.2d 363, 365 (1948). See, also, Meyers v.Blair Tel. Co., 194 Neb. 55, 230 N.W.2d 190 (1975);In re Lincoln Traction Co., 103 Neb. 229, 171 N.W. 192
(1919). "[U]nlike some public service commissions, the Nebraska Public Service Commission, in the different aspects of its constitutional functions, exercises legislative, administrative, and judicial powers." Meyers v. Blair Tel.Co., 194 Neb. at 62, 230 N.W.2d at 196.[2]
"Although the [Commission] is an independent regulatory body under the Nebraska Constitution, [Commission] jurisdiction to regulate common carriers may be restricted by the Legislature through `specific legislation'." State ex rel.Spire v. Northwestern Bell Tel. Co., 233 Neb. at 276,445 N.W.2d at 293.
While the Constitution provides for the creation of the Commission, various legislative enactments further outline the scope of the Commission's regulatory powers. Neb. Rev. Stat. § 75-109 (Supp 1995) provides, that, "[e]xcept as provided in sections 19-4603, 86-803, and 86-808, the commission shall regulate and exercise general control as provided by law over all common carriers, which term is hereby defined as all carriers, including contract carriers, engaged in the transportation of freight or passengers for hire or furnishing communication services for hire in Nebraska intrastate commerce."[3]
In addition to legislation in Chapter 75, Article 1, regarding the organization and composition of the Commission, its regulatory scope, and procedure, the Legislature has enacted statutes relating to the Commission's regulation of motor carriers (Chapter 75, Article 3), rail carriers (Chapter 75, Article 4), pipeline carriers (Chapter 75, Article 5), and telegraphs and telephones (Chapter 75, Article 6, and Chapter 86, Article 8). Also, while the Commission exercises constitutional authority in regulating common carriers, subject, of course, to specific legislative action, it exercises statutory authority in its regulation of contract carriers, transmission lines (Chapter 75, Article 7), grain dealers (Chapter 75, Article 9), water service (Chapter 75, Article 10), and grain warehouses (Chapter 88, Article 5). See In re Complaint ofFecht, 216 Neb. 535, 344 N.W.2d 636 (1984). (Commission jurisdiction over grain warehouses limited to functions specifically defined in statute, as grain warehouses not "common carriers").
LR 41CA would, if adopted, remove all references in the Constitution to the Commission, and would repeal art. IV, § 20, the constitutional provision creating the Commission. The Legislature has, as noted above, enacted numerous statutes outlining the powers and duties of the Commission in the regulation of common carriers, and the scope of Commission regulatory authority in other areas. If LR 41CA were approved by the voters, that would not, of course, operate to repeal or otherwise effect the statutory provisions relating to the Commission. While LR 41CA would eliminate the Commission as a constitutionally created body, it does not purport to remove all powers and duties of the Commission set forth in state statutes.
At present, however, there is no statute specifically providing for the creation of the Commission. This is so, of course, because the Commission is created by art. IV, § 20, of the Constitution, and its existence is therefore mandated by the Constitution. Thus, if LR 41CA is adopted, and the constitutional provision creating the Commission is eliminated, a question may arise regarding the continued authority of the Commission to operate pursuant to the numerous statutes setting forth its powers and duties, in the absence of any constitutional or statutory provision actually providing for its creation. Likewise, enactment of the amendment could also raise questions concerning the continued validity of rules and regulations adopted by the Commission, if the authority of the Commission to exist itself is not clear.
It appears that the intent of the amendment is to repeal the Commission's status as a constitutional body, thus providing the Legislature total authority to determine the scope of any regulatory power to be exercised by the Commission, or, if it chooses, allowing the Legislature to eliminate the Commission or transfer its duties and functions to other administrative officers or agencies. It is unclear what effect, if any, adoption of the amendment may have on the Commission's continued authority to operate under existing statutes outlining the Commission's powers and duties in the regulation of common carriers or other areas which are currently subject to regulation by the Commission. The ballot language for submission of the amendment does not specifically express an intent to abolish the Commission immediately if approved, but, rather, only states that it would "remove references to the Public Service Commission and the Railway Commission" from the Constitution. This seems to imply that it is intended that the Commission would continue to operate under the authority provided by statute if the amendment is approved, subject, of course, to future legislative determinations regarding its continued existence or the scope of its duties. If that, in fact, is the intention of the Legislature, perhaps amendatory language should be considered which would clearly manifest such intent. It may also be advisable for the Legislature to consider enacting a statute specifically providing for the creation of the Commission to exercise those powers and duties currently set forth by statute. While we believe that the Commission would retain its authority to enact pursuant to existing statutes if the amendment were adopted (subject, or course, to future legislative changes), some clarification of the Legislature's intent in this regard would be advisable.[4]
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg
Attorney General
[2] In many states, public service commissions are wholly creatures of statutory origin, and, as such, exercise only those powers expressly granted by the legislature. See, e.g.,United Tel. Co. of Florida v. Public ServiceComm'n., 496 So.2d 116 (Fla. 1986); Maine PublicService Co. v. Public Utilities Comm'n.,524 A.2d 1222(1987); Alpert v. Boise Water Corp.,118 Idaho 136, 795 P.2d 298 (1990).
[3] In Meyer v. Blair Tel. Co., the Nebraska Supreme Court, discussing a prior version of this statute, noted that it "essentially" was "merely a reiteration of the constitutional provision [art. IV, § 20]." 194 Neb. at 58,230 N.W.2d at 194.
[4] We note that, at one time, a statute existed providing that agencies, boards, and commissions would, upon termination, "continue in existence until July 1 of the next succeeding year for the purpose of concluding [their] affairs." Neb. Rev. Stat. § 81-199 (Cum. Supp. 1984). That statute, however, was repealed in 1986. 1986 Neb. Laws, LB 745, § 1.